[No. 12075.  In Bank. — February 18, 1888.]

JAMES JOHNSTON ET AL., PLAINTIFFS, v. SAN FRANCISCO SAVINGS UNION, DEFENDANT.

OPINION — FINDINGS. — An opinion of the trial court is not the "findings."

ID. — COLLATERAL ATTACK. — The question of the sufficiency of the findings to support the judgment cannot be made on a collateral attack.

SERVICE OF SUMMONS — APPEARANCE — FICTITIOUS NAME — INSERTION OF TRUE NAME — COLLATERAL ATTACK. — Where a person is not named as a party to the action, or served with summons, but files an answer which recites that he was sued under a certain fictitious name, to which no objection is made, and the case is tried and judgment rendered against him, he is bound by such judgment.  The non-insertion of his true name by amendment to the complaint does not render the judgment void on a collateral attack.

FORECLOSURE — LITIGATION OF ADVERSE INTERESTS — COLLATERAL ATTACK. — While adverse interests cannot properly be litigated in foreclosure, yet if they are put in issue, tried and determined, the judgment is not void on a collateral attack.

LAW OF THE CASE. — Instance of an application of the rule.

COMMUNITY PROPERTY — ACT OF 1850 — POWER OF SURVIVOR — MORTGAGE. — Under the act of 1850, the surviving husband had authority to keep alive a debt and mortgage made before the wife's death; and in determining the identity of the debt and mortgage, equity will look beneath the form of the transaction. But he had no authority to make an entirely new mortgage to raise money for the prosecution of new enterprises.

CONDITION OF EQUITABLE RELIEF. — Where the interest of a mortgagor escapes being bound by a decree in foreclosure through a slip in the proceedings, and he subsequently comes into equity to be relieved of the cloud cast upon his interests by reason of such proceedings, he will be required, as a condition of relief, to pay his proportion of the mortgage debt.

ID. — In imposing a condition, a court of equity will take into consideration all the circumstances, in order to arrive at the justice of the case, without regard to the strict legal rights of the parties.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion.

*Eugene R. Garber*, and *George C. Ross*, for Plaintiffs.

The decree in the foreclosure suit was void so far as it affected James Johnston, Jr., because he was not a party thereto, and did not intervene. (Code Civ. Proc., sec. 387.) The court in the foreclosure suit had no jurisdiction to adjudicate upon rights claimed and asserted adversely to both mortgagor and mortgagee, and paramount to both. (*San Francisco* v. *Lawton*, 18 Cal. 472; 79 Am. Dec. 187; *Fulton* v. *Hanlow*, 20 Cal. 450; *Flandreau* v. *Downey*, 23 Cal. 354; *Croghan* v. *Minor*, 53 Cal. 15; *Banning* v. *Bradford*, 21 Minn. 308; 18 Am. Rep. 398; *Corning* v. *Smith*, 6 N. Y. 82; *Lewis* v. *Smith*, 9 N. Y. 502; *Payn* v. *Grant*, 23 Hun, 136; *Littlefield* v. *Crocker*, 30 Me. 192; *Holcomb* v. *Holcomb*, 2 Barb. 20; *Roche* v. *Knight*, 21 Wis. 324; *McComb* v. *Spangler*, 71 Cal. 418;

*Summers* v. *Bromley*, 28 Mich. 127; *Munday* v. *Vail*, 34
N. J. L. 418.)   The surviving husband under the act of
1850 had no power to mortgage the children's interest
in the land.   He was by law vested with a naked author-
ity over the deceased wife's estate in the community,
limited to a sale of the property for the settlement of the
debts.  All his powers were derived by implication of law,
as in the case of a surviving partner.  (*Estate of Tomp-
kins*, 12 Cal. 114; *Packard* v. *Arellanes*, 17 Cal. 526; *Ord*
v. *De la Guerra*, 18 Cal. 67.)   The power of the surviv-
ing husband to sell the property did not include the
power to mortgage.  (*Trutch* v. *Bunnell*, 11 Or. 58; 50
Am. Rep. 456; *Hubbard* v. *German Catholic Cong.*, 34
Iowa, 37; *Hoyt* v. *Jacques*, 129 Mass. 287; *Ferry* v. *Laible*,
31 N. J. Eq. 566; *Stokes* v. *Payne*, 58 Miss. 614; *Albany
Ins. Co.* v. *Bay*, 4 N. Y. 9; *Bloomer* v. *Waldron*, 3 Hill,
361; *Patapsco G. Co.* v. *Morrison*, 2 Wood, 395; *Head* v.
*Temple*, 4 Heisk. 34; *Tyson* v. *Latrobe*, 42 Md. 325.)   The
surviving husband had no power to extend the indebted-
ness against the children's interest in the land.   (Wood
on Limitation, sec. 287; *Bell* v. *Morrison*, 1 Pet. 351; *Fonte*
v. *Bacon*, 24 Miss. 156; *Briscoe* v. *Anketell*, 28 Miss. 361;
61 Am. Dec. 553; *Bish* v. *Stowell*, 71 Pa. St. 208; 10 Am.
Rep. 694; *Martin* v. *Kirk*, 2 Humph. 529; *Van Kewen* v.
*Parmelee*, 2 N. Y. 523; *Hart* v. *Woodruff*, 24 Hun, 510;
*Shoneman* v. *Felgley*, 7 Pa. St. 433; *Knights* v. *Clement*,
45 Ala. 89; *Kallenbach* v. *Dickinson*, 100 Ill. 427; 39 Am.
Rep. 47.)   The power given to the husband to sell to
pay debts carries with it to the heir the correlative right
to have the property converted into money.  (*Estate of
Crosby*, 55 Cal. 574.)   The statute of limitations barred
the debt as to plaintiffs on the 25th of March, 1864.
(*Wells* v. *Harter*, 56 Cal. 342; *Jeffers* v. *Cook*, 58 Cal. 147;
*Lord* v. *Morris*, 18 Cal. 482.)

A. & H. C. *Campbell*, and *Cope & Boyd*, for Defendant.

The voluntary appearance of James Johnston, Jr., in
the foreclosure suit gave the court jurisdiction over him.

(*Tyrrell* v. *Baldwin*, 67 Cal. 1.)   The failure to insert his name in the complaint was a mere irregularity for which the judgment of foreclosure cannot be collaterally attacked.   (*Campbell* v. *Adams*, 50 Cal. 203.)   The title of the plaintiffs, being subordinate to the mortgage, was not adverse in such a sense as to preclude it from being litigated in the foreclosure action.   (Jones on Mortgages, sec. 1440; *Kohner* v. *Ashenauer*, 17 Cal. 578; *Mabury* v. *Ruiz*, 58 Cal. 11.)   Even if the plaintiff's title were adverse, the judgment determining it, although erroneous and liable to reversal, is not void.   On the contrary, it is valid until reversed, and cannot be collaterally attacked.   (Freeman on Judgments, sec. 303; *Board of Supervisors* v. *Mineral Point R. R. Co.*, 24 Wis. 121; *Lewis* v. *Smith*, 9 N. Y. 502; 61 Am. Dec. 706.)   The surviving husband, as the representative of the community, had power to make the mortgage in question for the purpose of adjusting and settling the affairs of the community.   (1 Hittell's Gen. Laws, art. 3571, sec. 9; Civ. Code, sec. 172; *Packard* v. *Arellanes*, 17 Cal. 525; *Cook* v. *Norman*, 50 Cal. 633; *Rusk* v. *Warren*, 25 La. Ann. 314; *Hawley* v. *Crescent City Bank*, 26 La. Ann. 230; *Carter* v. *Conner*, 60 Tex. 52; Jones on Mortgages, sec. 129; 2 Story's Eq. Jur., sec. 1064–1064 b.)   The sale under the judgment of foreclosure, and the deed executed in pursuance thereof, passed the title to the property, and divested the interests of the plaintiffs, although two of them were minors, and not parties to the judgment. (*Rusk* v. *Warren*, 25 La. Ann. 314; *Hawley* v. *Crescent City Bank*, 26 La. Ann. 230; *Carter* v. *Conner*, 60 Tex. 52; *Baird* v. *Lemee*, 23 La. Ann. 424; *Phelan* v. *Ax*, 25 La. Ann. 379; *Burleson* v. *Burleson*, 28 Tex. 383.)   If the plaintiffs are entitled to any relief, it can only be granted on condition that they pay their proportionate share of the debts of the community.   (*Coulson* v. *Wells*, 21 La. Ann. 383; *Kellogg* v. *Duralde*, 26 La. Ann. 234; *Walker* v. *Howard*, 34 Tex. 478.)

HAYNE, C. — An action to quiet title. In 1859 the property in controversy was the community property of James Johnston, Sen., and Petra Jara, his wife. In that year Johnston was indebted to J. and William M. Morris in the sum of seventeen thousand dollars, secured by mortgage upon the property, and " which said indebtedness was a debt contracted during the lifetime of said Petra, and after her intermarriage with said James Johnston, Sen., and was a debt of said marital community." Petra Jara died on April 30, 1861, leaving the three plaintiffs her surviving children. Prior to her death the debt had been reduced by payments, and subsequently there were many changes in the form of the indebtedness. In this regard the court finds: " That said debt was never paid, but that said James Johnston, Sen., at different times renewed and extended such debt, and the security therefor, which indebtedness and security were held by other persons than said J. and William M. Morris, but that it always existed and continued, increased by the accumulation of interest at said rate; and that new mortgages were by said James Johnston, Sen., substituted for the old from time to time as they fell due. That the loan made by the defendant herein and the mortgage given therefor . . . . was one of such renewals and substitutions; and *to the extent of $9,150, with interest thereon from April 1, 1864,* was a survival of the said debt of the marital community of said James Johnston, Sen., and Petra Jara."

In November, 1875, the defendant herein commenced an action to foreclose the mortgage mentioned in the finding quoted. The three children of Petra Jara (two of whom were then minors) were not parties defendant by name; but they came in and filed answers, reciting that they were sued by fictitious names, and setting up substantially the facts upon which they found their present claim. Judgment was entered for the plaintiff in said suit, and the property was sold, the plaintiff in

said suit (defendant herein) becoming the purchaser, and in due time receiving the sheriff's deed.

The court below decided against the plaintiff James Johnston, but quieted the title of the other two plaintiffs upon condition of their paying to the defendant their proportion of the community debt of $9,150, with interest from April 1, 1864.   Each side appeals.

1. It is contended that the court in the foreclosure suit filed a second set of findings, and that this being unauthorized, the decree was void.   It is plain, however, that what is termed the first set of findings is merely the opinion of the court.   The learned judge who wrote it calls it a "memorandum."   But if it had amounted to formal findings, and if the consequence had been that the second set of findings was unauthorized as contended, the result would simply be that the document first filed would do duty as the findings in the case; and it would not matter whether it supported the judgment or not.   For the question whether the findings support the judgment — in other words, whether the judgment is erroneous — cannot be raised in a collateral action. If there were no findings at all, a waiver would have to be presumed even on appeal in the cause, and *a fortiori* in a subsequent action.   It has even been held that a judgment ordered without a trial cannot be attacked collaterally.   (*Ex parte Bennett,* 44 Cal. 87.)

2. The plaintiff James Johnston, Jr., was of age at the time of the commencement of the foreclosure suit. As above stated, he was not named as a party defendant, nor was he served with summons under a fictitious name. But he came in and answered, reciting that he was sued by the fictitious name of John Doe, and setting up the substance of his claim in the present suit.   The complaint was not amended by inserting his true name, but judgment was entered against him by his true name.

The fact that he was not served with summons is immaterial.   Service of summons is waived by appearance

(except in case of a minor); and we think this rule applies where the party is sued by a fictitious name, as this party appears from his own recital to have been. Nor is it material that his true name was not afterwards inserted in the complaint. That irregularity does not render the judgment void. (*Campbell* v. *Adams,* 50 Cal. 203.)

But it is argued for this plaintiff that his interest was adverse to that of the mortgagor, and therefore, that it could not have been litigated in the foreclosure suit, and that the decree is void as to him for that reason.

Conceding for the purpose of the case that his interest was adverse within the meaning of the rule invoked, and that therefore it could not *properly* have been tried and determined in that suit, the fact remains that it *was* there tried and determined. The court had jurisdiction of the subject-matter and of the person; and this being the case, we fail to perceive how the circumstance that the issues tried were improperly mixed up with other issues can render the judgment void. If that were the rule, it would follow that questions as to misjoinder of causes of action and defense could be made on a collateral attack, which it is hardly necessary to say is not the case. If the party did not desire to have his interest passed upon in the foreclosure suit, and was right in his position with respect to it, he should have taken steps to present the question in that suit; or if he wished a jury trial, he should have asked for it there.

The case of *McComb* v. *Spangler,* 71 Cal. 418, is not in conflict with the foregoing. There the judgment of foreclosure against the party in question was by default. He did not set up his adverse interest; and the decision simply was that he was not required to do so. The other cases cited have no application. In *San Francisco* v. *Lawton,* 18 Cal. 472, 79 Am. Dec. 187, *Croghan* v. *Minor,* 53 Cal. 15, and *Marlow* v. *Barlew,* 53 Cal. 456, the question was made on appeal in the foreclosure suit.

In *Fulton* v. *Hanlow,* 20 Cal. 450, and *Flandreau* v. *Downey,* 23 Cal. 354, the actions were not actions of foreclosure.

3. The other plaintiffs here, viz., John F. Johnston and Francis T. Johnston, were minors at the time of the foreclosure suit. And it was held upon the former appeal that the court did not acquire jurisdiction of their persons in that suit. It is now argued for the defendant here that the surviving husband represented the community, and that therefore the children were not necessary parties, and *Carter* v. *Conner,* 60 Tex. 52, is cited. But that matter was decided upon the former appeal. The court there said: "As to the legal title of an undivided moiety of the lands, descent was cast upon them on the death of their mother. The object of the suit was to sell and transfer their title, as well as that of their father. They had an interest to protect it; to deny the existence of the mortgage, or to reduce the amount alleged to be secured by it; to prove that there were no community debts, or that they were less than the advance made by the mortgagee, and that the mortgagee had notice of the facts with reference to such indebtedness; that their father had exceeded his limited authority, and that the mortgagee knew it was not a mortgage in 'good faith.' As they were necessary parties to the foreclosure suit, the decree therein was void with respect to one half the lands mortgaged, unless the court acquired jurisdiction of the infants." (*Johnston* v. *S. F. Savings Union,* 63 Cal. 560, 561.)

This decision has become the law of the case, and the question as to the effect of the decree upon the interest of these two plaintiffs is no longer open. Upon the retrial the court below so held. But it is also held that, the present action being equitable in its nature, these plaintiffs would be granted relief only upon condition of their paying to the defendant here two sixths of the sum of $9,150 and interest. Each side appeals from this

decision. The two plaintiffs urge that no condition should have been imposed upon them, and that if it be imposed, the rents and profits should be set off against it. The defendant contends that the condition should have been extended to a proportion of the whole sum found due in the foreclosure suit. We will examine these positions separately.

(*a*) The wife having died while the act of 1850 was in force, that act must govern the case. The construction which it received was that the death of the wife did not release any portion of the property from liability to be taken for community debts, and that her descendants took it, subject to the payment of such debts; that no probate administration of the estate of the deceased wife was necessary, but that the husband had control of the property as survivor of the marital partnership for the purpose of settling up its affairs. (See *Packard* v. *Arellanes*, 17 Cal. 536; *Ord* v. *De la Guerra*, 18 Cal. 67; *Cook* v. *Norman*, 50 Cal. 637.)

At the time of the death there was a community debt, which was secured by mortgage upon the property. This debt (or a portion of it) was kept alive by the surviving husband by renewals, extensions, and substitutions, as stated in the finding above quoted. If he had the power so to keep it alive, we think it must be regarded as the same debt; for a court of equity will look beneath the mere form of the transaction and regard its substance only. We think he had the power. If he could have conveyed the whole property in satisfaction of the debt, as was held in *Cook* v. *Norman*, above cited, it is hard to see why he could not attempt to save some of it for those interested by putting off the day of payment. (*Rusk* v. *Warren*, 25 La. Ann. 314.) The children were not personally liable for the debt, and could not lose, but might have gained, by the course taken.

At the time of the foreclosure suit, therefore, the interests of these children were bound by the mortgage for

a portion of the debt.   Their interests escaped from the operation of the decree by a mere slip in the foreclosure proceedings.   And while it must be held that they did so escape, yet when the owners of such interests come into equity for relief against the cloud arising from the very same foreclosure proceedings, they must be prepared to do equity.   And we think it is equity that they should pay such proportion of the community debt as their share bears to the whole property, viz., two sixths.   (See *Kellogg* v. *Duralde*, 26 La. Ann. 234.)   The court below, therefore, was right in imposing the condition upon the plaintiffs.

(*b*) We think it was also right in not extending the condition to a proportion of the whole sum found due in the foreclosure suit.   The equity to which effect is given by the condition depends upon whether at the time of the foreclosure suit, the interests of the plaintiffs were bound by the mortgage.   As above stated, we think their interests were bound by the mortgage for so much of the debt as was a survival of the original debt contracted during the existence of the community.   This was fixed by the findings at $9,150, with interest as specified; and after a careful examination we cannot say from the record that this finding was not justified by the evidence.   The remainder of the sixty thousand dollars, then, was a debt contracted after the dissolution of the community.   The question, therefore, is, whether the surviving husband had the power to bind the interests of the children for the payment of this portion of the debt.

The position that he had such power appears to us to rest upon the idea that notwithstanding the death of the wife the "community" continued or might continue with reference to the children's interest.   So far as we are advised, that was the case in the Spanish law.   In the argument of the case of *Packard* v. *Arellanes*, Mr. Lies (who was well versed in Spanish law) said: " By what-

ever shadowy designation of feigned dominion or defeasible right the Spanish jurists call the mother's title, her heirs knew that the property must descend to them, and that their father managed it *as their senior partner.*" (17 Cal. 530.) And in *Ord* v. *De la Guerra*, Baldwin, J., delivering the opinion, said: " It is, moreover, held by the civil law that when the husband keeps undivided the common property after the death of the wife it is presumed to be done with the acquiescence of the heirs, and *the effect is to continue the partnership.* (See Escriche's Dict., verb. Bienes Gananciales, 368.) "

But this doctrine of the Spanish law (if such it be) did not obtain a foothold in our law. Under the act of 1850 the wife's interest vested in her descendants. " They take title of the same nature, and to the same extent, as that which vests in the survivor." (*Broad* v. *Broad*, 40 Cal. 496; and see *Broad* v. *Murray*, 44 Cal. 228; *Johnston* v. *Bush*, 49 Cal. 201.) The property remained subject to the community debts; and the duty of settling such debts was upon the husband. But he took as surviving partner (*Packard* v. *Arellanes; Ord* v. *De la Guerra*), not as a continuing partner. The partnership was dissolved by the death; and his duty was to settle up its affairs, not to proceed to impose new burdens upon the property in the prosecution of new enterprises.

In *Cook* v. *Norman*, in reasoning to the conclusion that the surviving husband had power to convey the property in satisfaction of a community debt, the court said: " The authority *to sell* the property of the community belongs to him as the survivor of the community, and is the same *in its nature* as was his power to do so during the existence of the community." It is to be observed that this case proceeds upon the assumption that the debt in question was a community debt, and the *decision* was merely that a conveyance by the surviving husband was one of the modes in which the property could be made to satisfy the liability for such debts, which

liability was admitted to exist. This is widely different from saying that the property is liable for debts which are not community debts, — that is, for debts contracted after the dissolution of the community. The statement quoted was not necessary to the decision, and seems rather vague. It is to be observed, however, that what the court was speaking of was the power to convey, and that what it said of this power was that it was the same "in its nature" as before the dissolution of the community. It was not said that this power was the same *in extent* as before the dissolution, and it is impossible that the court should have meant this. For that would be to say that the children's interests could be taken for non-community debts, or in other words, that the power of the husband was unrestrained. We do not regard the case as conflicting with the views above expressed.

In *Packard* v. *Arellanes* the court said that the debts for which the property was liable to be taken included all debts of the community contracted for the common benefit, "whether by the deceased *or by the survivor.*" This remark was not necessary to the decision, which was merely that no probate administration upon the estate of the wife was necessary. There can be little doubt that such expenditures as are necessary to preserve the property *in statu quo* may be made by the surviving husband, and would be allowed upon a settlement of his accounts. But the case here is manifestly not of that character.

The interests of the children, therefore, were not bound for the debt contracted after the dissolution of the community, and there is no equity in imposing a condition as to such debt.

(c) We do not see why the rents and profits of the shares of these two children should not be set off against the amount of the condition imposed upon them. This does not refer to the rents and profits received by James Johnston, Sen. The defendant here is not James John-

ston, Sen., and cannot be charged with rents and profits which it did not receive. But after it went into possession under the sheriff's sale, it received the rents and profits of all the land except a small portion in possession of the plaintiffs. It had no right to the rents and profits of the plaintiff's share, and should be charged therewith. It is probably true that the parties (being tenants in common) could not be made to account to each other in an independent action. But in imposing a condition, the court must take into consideration all the circumstances in order to arrive at the justice of the case.

The other positions do not require special notice.

We therefore advise that the cause be remanded with directions to the court below to find, from such additional evidence as may be introduced, the value of the rents and profits of the entire property since the defendant has been in possession, and also the value of the rents and profits since said time, of the portion in possession of the said two plaintiffs, and after deducting the latter amount from the former, to set off two sixths of the remainder against the amount of the condition imposed upon said plaintiffs; that in all other respects the judgment and order appealed from be affirmed; the said two plaintiffs to recover their costs of appeal.

FOOTE, C., and BELCHER, C. C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the cause is remanded, with directions to the court below to find, from such additional evidence as may be introduced, the value of the rents and profits of the entire property since the defendant has been in possession, and also the value of the rents and profits since said time, of the portion in possession of the said two plaintiffs, and after deducting the latter amount from the former, to set off two sixths of the remainder against

the amount of the condition imposed upon said plaintiffs; and in all other respects the judgment and order appealed from be affirmed; the said two plaintiffs to recover their costs of appeal.