ANNA NELSON, an Insane Person, by John A. Nelson, Her Special Guardian, Plaintiff and Respondent, v. J. L. WALROD and John NELSON, Defendants. J. L. WALROD, Defendant and Appellant.

(206 N. W. 218.)

**Mortgages — suit to set aside conveyance and remove cloud of foreclosure proceedings held one to quiet title; adjudication in foreclosure proceeding of question of paramount title held conclusive against collateral attack.**

In 1908, Mr. Nelson conveyed the land in controversy to Mrs. Nelson; in October, 1909, Mrs. Nelson was adjudged insane; in February, 1912, while on

parole from the hospital for the insane, she re-conveyed to her husband; in June, 1914, she was adjudged' restored to sanity and capacity by a decree of the county court, but in October following recommitted to the hospital as insane. In May, 1920, the husband obtained a divorce on the ground that the wife was incurably insane. In August, 1920, Mr. Nelson executed a mortgage on the land to Walrod which was foreclosed in June, 1923; the land was sold pursuant to the decree. Mrs. Nelson was made a party by special guardian, regularly appointed by the court, but no defense was interposed, the guardian merely filing an affidavit that he had been advised by counsel that she had no "meritorious defense." The judgment on its face, decrees that Mrs. Nelson's interest is inferior and junior to the lien of the mortgage. In an action by Mrs. Nelson to set aside the conveyance to her husband and remove the cloud of the foreclosure proceedings, it is held

(a) That the action is one to quiet title and is not a direct proceeding to vacate, annul or set aside the foreclosure judgment.

(b) That the judgment in the foreclosure action adjudicates upon its face the question of paramount title, adversely to the plaintiff; and that although the adjudication of the issue of paramount title in a foreclosure proceeding is ordinarily improper, the irregularity is not jurisdictional and the decree is conclusive collaterally.

Opinion filed June 29, 1925. After reargument November 27, 1925.

Mortgages, 27 Cyc. p. 1669 n. 93. Quieting Title, 32 Cyc. p. 1317 n. 73.

Appeal from the District Court of Foster County, *Jansonius*, J. Reversed.

*C. W. Burnham* and *S. E. Ellsworth*, for appellant.

A bill to cancel a deed having been fraudulently obtained, should either set out a copy of the instrument sought to be canceled, or describe it with such certainty that it can be exactly identified.

A bill to cancel a deed which fails to show the name of the grantee in such deed or person claiming adversely under it is fatally defective. Nation v. Cameron (Dak.) 11 N. W. 525.

The presumption that an instrument executed with the formality of a deed, or a contract deliberately entered into, expresses on its face its true intent and purpose, is so persuasive that he who would establish the contrary must go far beyond the ordinary rule of preponderance. Jasper v. Hazen, 4 N. D. 1, 58 N. W. 454.

To set aside mortgages given under the sanctity of his own acknowledgment, plaintiff must show their invalidity by evidence that is clear

and convincing, and that leaves no doubt in the mind of the chancellor. Weist v. Farmers State Bank, 32 N. D. 176, 155 N. W. 17.

The presumption is that the bill of sale is valid and binding, and this presumption will not be overcome by a mere preponderance of the evidence. On the contrary, fraud, duress, menace, or undue influence must be shown by evidence of the clearest and most satisfactory character before the bill of sale will be set aside. Hellmons v. Knudsvig, 48 N. D. 1167, 189 N. W. 234.

An assignment of a contract to purchase land by a person non compos mentis is voidable only. Wolcott v. Conn. General L. Ins. Co. (Mich.) 100 N. W. 659.

The issues being whether respondent was bound by a contract of settlement of the cause of action pleaded, held error to refuse to instruct the jury that she ratified the contract, if she accepted the benefits of its terms after becoming informed of its contents, although she may have executed the same when mentally incapacitated, or upon false representations. Ham v. Potter, 101 Minn. 439, 112 N. W. 1012.

The party claiming to be owner of the mortgaged property at the time of foreclosure must be made a party defendant. Skinner v. Buck, 29 Cal. 253.

In an action to foreclose a mortgage the plaintiff may join as defendant one claiming an adverse and paramount title to the mortgaged premises, for the purpose of determining such adverse interest. Busenbark v. Park (Kan.) 49 Pac. 682.

In a suit to foreclose a mortgage the title of one claiming by adverse possession may be adjudicated. St. Johnsbury R. Co. v. Willard (Vt.) 17 Atl. 28.

*Hoopes & Lanier,* for respondent.

All allegations will be stricken as irrelevant when they cannot, in any aspect of the case, be or become material, or when they contain only facts which cannot affect the decision of the court. 31 Cyc. 638; School Dist. v. Wemen (Wis.) 28 N. W. 31.

Title by adverse possession cannot be acquired against one while insane. Clarity v. Sheridan (Iowa) 59 N. W. 52.

An insane person who has not received any of the proceeds of the sale of his lands by his guardian is not estopped from questioning the validity of the sale. Richardson v. Marietta (S. D.) 149 N. W. 533.

And it is the general rule that a person non sui juris, especially in the case of an insane person, cannot be subject to such an estoppel. 27 R. C. L. 440.

Conveyance of homestead from husband to wife not fraudulent. Bank v. O'Leary, ·13 S. D. 204, 83 N. W. 45.

It is not a fraudulent act for a debtor to transfer to his daughter a homestead which is exempt from execution. McKillip v. Farmers State Bank, 29 N. D. 541, 151 N. W. 287.

Where insanity at a particular time is in issue, evidence of insanity before or after that time will be received subject to a proper restriction as to remoteness. 22 Cyc. 1117, 1118.

The right of an insane person to avoid his deed is an absolute and paramount right, superior to all equities of other persons and may be exercised against bona fide purchasers from the grantee. Hovey v. Hobson, 53 Me. 451, 89 Am. Dec. 705.

The deed of an insane person is voidable only, but while he is under guardianship he is conclusively presumed incompetent to make a valid deed, though he is in fact sane at the time he attempts to do so. Thorp v. Hanson, 64 Minn. 201.

An action to quiet title, brought by one who had been insane but had been restored to reason against a purchaser at a sale by the plaintiff's guardian for the purpose of annuling the guardian's sale, is a direct and not a collateral attack upon the order confirming the sale. Richardson v. Mariette (S. D.) 149 N. W. 554.

JOHNSON, J. When this action was commenced, the plaintiff, Anna Nelson, was insane, and John Nelson, a son, brings it as her guardian in her behalf.

On March 21, 1908, the land in controversy was conveyed by defendant John Nelson, husband of the plaintiff, to Anna Nelson, the incompetent. She was then his wife. The premises were then occupied as a homestead. On October 15, 1909, Anna Nelson was adjudged insane and committed to the state hospital at Jamestown; on November 8, 1909, her husband was appointed her guardian by the county court of Foster county. On June 25, 1910, she was released on parole from the state hospital for the insane, and formally discharged therefrom on January 4, 1911, as cured. She remained at home thereafter. On

February 17, 1912, she reconveyed the premises to her husband and acknowledged the deed of conveyance before a notary public. This is the deed under attack. On June 26, 1914, she was restored "to sanity and capacity" by a decree of the county court, and on the same day her husband, John Nelson, was discharged as her guardian. In October, 1914, she was again adjudged insane and committed to the state hospital, where she has remained ever since. She is suffering from a derangement known as dementia praecox. In May, 1920, John Nelson obtained a divorce on the grounds of incurable insanity.

On August 26, 1920, John Nelson, "a widower," executed a mortgage to secure the sum of $6,000 to the defendant Walrod upon the premises in controversy. Walrod's good faith in making the loan is not questioned. Having defaulted in the payment of the loan, Walrod commenced foreclosure proceedings in January 1923. In the foreclosure action Anna Nelson was made a party defendant and upon the petition of the mortgagee, Walrod, one Dwight Jones was named as her special guardian. The guardian filed no answer in the foreclosure proceedings, and did not appear at the trial, but filed an affidavit reciting that he had consulted a lawyer—name not stated—who had advised him that Mrs. Nelson had no meritorious defense. It does not appear that the relatives of Mrs. Nelson had any actual knowledge of this transaction until after the sale. In that action the complainant alleged that Mrs. Nelson, has, or claims to have "some interest in or lien upon said mortgaged premises which interest or lien, if any, has accrued since the lien of said mortgage herein described, and is subject thereto and inferior to plaintiff's claim." A decree of foreclosure was duly entered, and in June, 1923, the premises were sold under execution and a sheriff's certificate issued accordingly. The judgment "forever barred" Anna Nelson from asserting "interest in or lien upon said property," and decrees, among other things, that her "interest" in the premises is "secondary, inferior and junior to that of the mortgage." This part of the decree adopts the language of the prayer for relief. In December, 1923, the present action was commenced for the purpose of having the deed of conveyance of February 17, 1912, decreed null and void, canceling, as of no effect, the Walrod mortgage, and voiding in all respects the proceedings had for the foreclosure of the same. The prayer also asks for a decree that John Nelson and the defendant Walrod be for-

ever barred from claiming or asserting any right, title or interest in and to said premises by reason of the deed and mortgage aforesaid and of the foreclosure proceedings had pursuant thereto. The theory of the action is that at the time Mrs. Nelson conveyed the premises to her husband, she was "mentally incompetent to manage her affairs."

The trial court made findings of fact, conclusions of law, and order for judgment in favor of the plaintiff, adjudging, in substance, that the deed of February 17, 1912, was void and of no effect; that the mortg? 'e to defendant Walrod dated August 26, 1920, was void and of no if. :t; that the proceedings to foreclose the mortgage aforesaid be set asi le and the sheriff's certificate issued pursuant thereto be decreed voi,l and of no effect; that defendants Walrod and Nelson—the latter def ulted in this action—have no right, title to or interest in the pr( .nises in controversy; that they are forever barred from claiming or as/ :rting any right or title thereto; and that the title to the premises b( quieted in the plaintiff, Anna Nelson, as against the claim of de-f/ ndants Nelson and Walrod. The trial judge finds that Mrs. Nelson " has been continuously insane since the 15th day of October, 1909, at which time she was adjudged insane and committed to said asylum," and that she "was insane at the time she executed the deed to John Nelson."

From this judgment Walrod appeals and asks a trial anew. Nelson does not appeal. It appears, from the facts stated above, that on the date of the transfer here challenged, Anna Nelson was under the guardianship of the grantee, her husband, although not confined in the state hospital for the insane; and that she was not formally restored to sanity until sometime later. Walrod contends that she was competent to transact business and to effect the conveyance at the time it was made; that the guardianship had, in legal effect, been abandoned, although the guardian had not been formally released or discharged. He further contends that this action is a collateral attack upon the judgment in the foreclosure action and that inasmuch as Anna Nelson was made a party defendant therein, duly served, and a special guardian appointed for her, she cannot in this proceeding raise a question as to the validity of her deed of conveyance to John Nelson, on February 17, 1912.

"One of the most characteristic symptoms of the disease is the

emotional disturbances that are always present when the disorder is at all pronounced. These vary from slight indifference and lessened emotional responsiveness to their . experiences, to the most intense apathy. The effect of this is to impair their interest in their work or responsibilities. Intellectual development suffers because they take little or no interest in reading or in what may be mentally stimulating. In the more severe degrees the patient loses all interest in the care of his person and even for his necessary requirements.

"In spite of this emotional dullness to their experiences and environment, there is usually present an irritability and a tendency to impulsive outbursts of anger that often makes it difficult to care for them and not infrequently may have a forensic importance." 1 Peterson, Haines & Webster, Legal Medicine & Toxicology, p. 606.

In the dementia praecox patient "there generally occurs a progressive lessening of his spontaneous initiative and an unsteadiness in his ability to keep at a task. As the disorder continues he tends to develop various abnormalities of attitude and conduct. . . . He may show stupor, with disinclination to care for himself or give attention to his surroundings. . . . The most common disturbance is the hesitation that occurs as a result of the blocking of the thought processes." Ibid.

The uniform tenor of the testimony of the witnesses for the plaintiff is that Anna Nelson never spoke unless spoken to, and then only if urged persistently; that she would do some work, e. g., milk the cows, when told to do so; that she would never undertake any task without specific instructions; that she would not complete it without detailed directions. In short, there was a "progressive lessening of her spontaneous initiative and an unsteadiness of her ability to keep at a task." She would become easily irritated and then spit at the objects of her anger; she would remain standing indefinitely if a certain chair was not placed for her; and she would never take part in games, conversation, or social intercourse. She developed "various abnormalities of attitude and conduct" said to mark the victim of this malady. This testimony covers a period prior and all the time subsequent to the execution of the deed to her husband. The notary who took her acknowledgment says he talked with her "nothing more than to say 'Good morning'," and that she remained in the room where she signed "I don't think any longer than it would take to sign her name."

The grantor was afflicted with incurable insanity. The mental disorder from which she was suffering "follows essentially a chronic course. The progress of the disorder may stop at any stage, but a complete recovery is not likely to occur." Id. p. 604. The thought processes become disordered; ideas and fragments of ideas intermingle, without the power of the will to control their operations, with resulting incoherency and incapacity to follow a settled course of thought or conduct. Such was precisely the progress of the affliction in the case at bar. We are entirely satisfied that the finding of the court that Anna Nelson was "continuously insane" after October 15, 1909, not only has abundant support in the record, but that no other inference could be reasonably drawn from the testimony.

There remains but one serious question in the case, and that is whether the rights of the plaintiff were finally adjudicated in the foreclosure action. The defendant strongly insists that the proceeding is a collateral attack on a judgment that has become final and cannot, therefore, upon familiar principles, be maintained.

Before any testimony was offered, counsel for the plaintiff said to the court: "At the outset we submit to the court that the only question for determination by this court is the mental condition of the plaintiff at the time of the execution by her of the deed to her husband, who was at the time her guardian appointed by the county court of Foster county." The first witness was thereupon sworn and counsel for defendants objected to the introduction of any evidence on the ground, among others, that the complaint showed that plaintiff's claim of interest in the land had been the subject of adverse adjudication in the foreclosure action and that the judgment therein could not be thus collaterally attacked.

It thus appears that the parties did not, at least at the opening of the trial, construe the action as an attack upon a judgment, but rather as a proceeding to quiet title. The complaint contains allegations of fraud sufficient to warrant the introduction of evidence for the purpose of vacating the judgment in the foreclosure action, on that ground, in so far as it purports to adjudicate upon the rights of plaintiff in the land. There is, however, no evidence of fraud in procuring that judgment, unless an inference thereof should be drawn from the fact that the special guardian did not answer, but filed an affidavit in which he

averred that upon consulting counsel he had been advised that Anna Nelson had no "meritorious defense" to the action. The court made no formal finding in the instant case on the question of the alleged fraud in the foreclosure action. In the memorandum decision the learned trial judge says that it appears that the special guardian of Anna Nelson "acted in good faith in permitting the plaintiff therein to take judgment by default." The theory of the learned trial court manifestly was that "the subject-matter of this lawsuit was not involved in said foreclosure action . . . nor was the paramount title to said land litigated in said foreclosure action," as stated in his findings. The entire record and the conclusions of the trial court negative the existence of any fraud whatever in connection with the foreclosure. The only question is whether the judgment in that action purports upon its face to adjudicate the matter of the plaintiff's claim of interest in the land, and if so, whether such adjudication is conclusive. Upon this precise question—whether the foreclosure judgment on its face adjudicates the question of paramount title, and if so, whether it is conclusive collaterally—the memorandum decision is silent.

We think it must be held that the primary purpose of the present action was, as stated by counsel for the plaintiff, to set aside the deed of February 17, 1912, and to quiet title in the plaintiff, on the theory that John Nelson never acquired any mortgageable interest in the land.

We are confronted with a judgment which expressly decrees that the interest of the plaintiff is "secondary, inferior and junior to that of the mortgage." From that judgment no appeal has been taken; no motion has been made to vacate the default against the plaintiff on any of the grounds enumerated in § 7483, Comp. Laws 1913. There was jurisdiction of the person of the defendant by service on a special guardian duly appointed by the court. The trial court says that this guardian acted in good faith and the record contains no evidence to the contrary. "As a general rule, a court of equity in a suit to foreclose a mortgage, will not undertake to determine the validity of a title prior to the mortgage and adverse to both mortgagor and mortgagee; because such controversy is independent of the controversy between the mortgagor and the mortgagee as to the foreclosure or redemption of the mortgage, and to join the two controversies in one bill would make it multifarious." Hefner v. Northwestern Mut. L. Ins. Co. 123 U. S.

747, 31 L. ed. 309, 8 Sup. Ct. Rep. 337. In Iowa County v. Mineral Point R. Co. 24 Wis. 93, 121, after stating the general rule to be as laid down above, it is said: "But whether, until reversed, such decree is *coram non judice* and void, so that it may be collaterally impeached, is quite another question. The conclusion would seem to follow, from all the decisions, that it is not." To the same effect see Freeman on Judgments, 5th ed. § 880.

In Dickerman Invest. Co. v. Oliver Iron Min. Co. 135 Minn. 254, 160 N. W. 776, it is said:

"The judgment determined that the Congdon interest was subsequent to the lien of the mortgage. What the evidence was we do not know nor could we review it if we did. Under the evidence it may have been right or it may have been wrong. Whether right or wrong the adjudication is final. If wrong it could have been corrected on appeal. It cannot be attacked collaterally. That it is now sought to do. We think the weight of authority favors the view that such a judgment is binding and cannot be assailed collaterally."

Again in the same case, it is said:

"The rule which denies the right to litigate a paramount title is one of practice or procedure. There is nothing in the constitution of the court or the character of the adverse title that forbids its determination. It is not, it seems to us, a question of jurisdiction, unless a statute or some positive rule of law makes it so and there is none in this state. Besides under the pleadings and findings the asserted claim was subsequent to the mortgage. It was not the litigation of a claim conceded to be paramount. If the judgment is not a bar a defendant alleged to have a subsequent interest could always relitigate upon the theory that his interest was prior and paramount. A judgment of foreclosure would not be a final adjudication of interests alleged to be subsequent. This result should not follow and we hold that it does not."

Nothing would be gained by a lengthy discussion of the authorities. We have examined all those cited by the plaintiff. We are convinced that the sounder reason supports the rule that if the issue of paramount title be in fact, though with impropriety, injected into foreclosure proceedings, and that issue is adjudicated, the irregularity is not jurisdictional and the decree is conclusive collaterally. Hefner v. Northwestern Mut. L. Ins. Co. supra; Dobbins v. Economic Gas Co. 182

Cal. 616, 189 Pac. 1073; Beronio v. Ventura County Lumber Co. 129 Cal. 232, 79 Am. St. Rep. 118, 61 Pac. 958; Johnston v. San Francisco Sav. Union, 75 Cal. 134, 7 Am. St. Rep. 129, 16 Pac. 753; Bundy v. Cunningham, 107 Ind. 360, 8 N. E. 174; Ulrich v. Drischell, 88 Ind. 354; Shears v. Dusenbury, 13 Gray, 292; Dickerman Invest. Co. v. Oliver Iron Min. Co. supra; Iowa County v. Mineral Point R. Co. 24 Wis. 121. We are aware that there is substantial support in the authorities for the view that this result does not follow unless the facts are more explicitly pleaded than by a general allegation such as was made in the complaint in the case at bar. Beronio v. Ventura County Lumber Co. 129 Cal. 232, 79 Am. St. Rep. 118, 61 Pac. 958; Tax Lien Co. v. Schultze, 213 N. Y. 9, L.R.A.1915D, 1115, 106 N. E. 751, Ann. Cas. 1916C, 636. See also Huntzicker v. Crocker, 135 Wis. 38, 115 N. W. 340, 15 Ann. Cas. 444. "The rules of pleading in equity are broader and more elastic than those at law, by reason of the inherent character of the relief which may be sought and given. . . ." 21 C. J. 366. The complaint, including the prayer for relief, is broad enough to warrant the introduction of proof and a judgment "barring forever" the interest of the plaintiff. Her legally appointed guardian, in effect, confessed judgment in good faith. The judgment distinctly decrees that the interest of plaintiff in the land is inferior to that of the defendant Walrod. Whether the court based its judgment on evidence other than the affidavit of the special guardian, we do not know and have no means of knowing. Whether the evidence, whatever it may have been, warranted the findings and the judgment in the foreclosure action, we do not know. The evidence is not here, and if it were, we could not consider it. To an action by plaintiff, the primary purpose of which was to quiet title and remove certain clouds therefrom, the defendant pleads a judgment of a court of competent jurisdiction, decreeing that the plaintiff's interest, whatever it may be, is inferior to the lien of the mortgage. That judgment has never been directly challenged. The record in the instant case is devoid of evidence showing that that judgment was obtained by fraud or through the mistake, or excusable neglect of the plaintiff. We see no escape from the conclusion that it stands as a bar which plaintiff has taken no appropriate steps to remove. Both parties construed this as an action to avoid a deed and to quiet title, and nothing else. This is evidenced by the

statement of plaintiff's counsel and by the answer setting up the judgment in the foreclosure proceedings as a bar. The trial court was of the opinion that the issue of paramount title had not been in the foreclosure action. We are constrained to the conclusion that the judgment upon its face distinctly and "forever" bars plaintiff's claim of interest, and is conclusive collaterally.

What our views as to the equities may be is of no particular importance. In the divorce action no steps were taken by any one to protect whatever interest Mrs. Nelson might have had in the land, although a neighbor of the Nelsons and a friend of the present guardian was named special guardian in that proceeding. Defendant Walrod made the loan in reliance upon the record title and there is no claim or suggestion that he acted either negligently or in bad faith at any stage. In the foreclosure action service was had on Mrs. Nelson in the manner provided by law in the cases of incompetent defendants. Those interested in the present action did nothing then to apprise the court of her claim. A judgment was entered and she did not appeal or move directly to set it aside. She is bound thereby.

Judgment reversed and case dismissed.

CHRISTIANSON, Ch. J., and BURKE, BIRDZELL, and NUESSLE, JJ., concur.

### After reargument.

PER CURIAM. After the foregoing opinion was filed, all of the issues were reargued by counsel for both parties. After careful reconsideration of the questions of law and of fact discussed and decided in the original opinion, we are satisfied that our conclusions therein expressed are correct.