CASE 2—AN ACTION BY JOHN AND GEO. GRAHAM'S HEIRS AND OTHERS, AGAINST CHARLES KITCHEN AND OTHERS, TO RECOVER LAND.— APRIL 26.

# Graham's Heirs, &c. v. Kitchen and Others.

APPEAL FROM GREENUP CIRCUIT COURT—JAMES P. HARBESON, CIRCUIT JUDGE.

FROM A JUDGMENT DISMISSING THE PETITION, PLAINTIFFS APPEAL. AFFIRMED.

LAND.—TITLE.—LEGISLATIVE ACT. — CONSTRUCTION. — JURISDICTION.— VENUE—NEW COUNTY.

1. A special act of the General Assembly provided that the heirs of certain persons might file a petition in a specified circuit court, setting out what land they held from their ancestors in the State, and the condition of the title, and that a commissioner should be appointed to examine into the condition of the lands and the titles, and it should be lawful for such circuit court to decree a sale and appoint a commissioner to make sale. HELD, that such circuit court, having obtained jurisdiction under the statute continued to hold the jurisdiction, notwithstanding a subsequent statute creating a county had cut off part of the land into the latter county.

2. The circuit court had no jurisdiction to try title as between the heirs and others claiming the lands in another county adversely, since the special statute in question gave the circuit court no such authority, and Civ. Code, section 62, gives counties in which lands are situated exclusive jurisdiction to try questions involving title thereto.

3. The doctrine that an entry of lands by a stranger to a suit involving the title, *pendente lite*, affects him by the judgment as

if he were a party to the record, applies only when the stranger enters under some person who is a party to the suit.

4. A special act of the General Assembly provided that the heirs of certain persons might file a petition in a specified circuit court, setting out what lands they held from their ancestors in the State, and the condition of the title, and that a commissioner should be appointed to examine into the condition of the lands and the titles, and it should be lawful for such circuit court to decree a sale and appoint a commissioner to make sale. HELD, that the fact that, pending a petition by the heirs for a sale, certain persons entered the land adversely, did not give such circuit court jurisdiction to try the disputed question of title, on the ground that they were in contempt in interfering with the subject-matter, the circuit court not having been in possession of the land by a receiver or otherwise, and contempt proceedings not being appropriate to try a disputed title.

BENNETT & BYBEE, ATTORNEYS FOR APPELLANTS.

We contend that there can be no defect of parties to this proceeding as long as the court's commissioner is a party complainant.

As John and George Graham's heirs placed the lands into the hands of the court, under the act of the General Assembly, to sell and convey to purchasers and distributee the proceeds to those entitled thereto, they are bound by the court's action and could not either sell or convey.

The Commonwealth has by said act raised a trust, and by its officers, assumed and is in discharge thereof, and the rights of the beneficiaries is being constantly asserted through their trustee, and the only part they have in the matter is to receive the proceeds of the sales of said lands as distributed by the court after paying all expenses of such sales.

### AUTHORITIES CITED.

1. Special act of the General Assembly for the benefit of John and George Graham's heirs, approved, February 20, 1835.

Act establishing Carter county, passed February 9, 1838, section three.

Drake v. Bedinger, Sneed, p. 188; Couchman's Heirs v. O'Bannon, 1 A. K. Marshall, p. 386; Lindsay's Heirs v. McCormick, 2 A. K. Marshall, page 229; Crawford v. Summers, 3 J. J. Marshall, page 301; Howard v. The Ky. and Louisville Mutual Insurance Co., 13 Ben Monroe, page 282; Dorsey v. Reese, 14 Ben Monroe, page 158; Hawes v. Orr, 10 Bush, page 439;

Landrum v. Farmer, 7 . Bush, page 49; Russell, etc. v. Muldraugh's Hill, Campbellsville and Columbia Turnpike Co., 13 Bush, page 310; Aldrich v. Hawkins, 6; Blackf. (Ind.) page 126; Barnes v. Underwood, 54 Georgia, p. 87; Brown on Jurisdiction, section 1, page ——, section 10, page 22, and section 12, page 30; Waite on Action and Defenses, vol. 1, page 51; also vol. 3, p. 205.

2. "Jurisdiction in civil cases when a new county is formed," Am. & Eng. Ency. of Law, vol. 4, page 355. First edition and cases cited in note one on same page, and note especially, case of Milk v. Kent, 60 Indiana, 226, and the Pennsylvania case, the California case, and the Alabama case; you will also note that the Kentucky cases that you have cited are referred to in this note.

R. D. DAVIS, ATTORNEY FOR APPELLEES.

1. We contend that the court had no jurisdiction of the defendants or of either or any of them.

2. That the court had no jurisdiction of the subject matter of the action as against the defendants, or any of them.

3. That there is a defect of parties plaintiffs.

4. There is no sufficient description of the lands, sought to be recovered in the pleadings.

5. It nowhere appears that the land sought to be recovered from appellees was ever in the custody or possession of any commissioner appointed in the proceeding in which this appeal is prosecuted, or that any of Graham's heirs were ever in possession of any such lands.

AUTHORITIES CITED.

Civil Code, secs. 92, 93, 62, 125.

OPINION OF THE COURT BY JUDGE O'REAR—AFFIRMING.

Richard Graham was the patentee, under the Commonwealth of Virginia, of several large tracts of land, located now in Carter, Greenup, and other counties in this State. Richard Graham died prior to 1835. His heirs are alleged to have been John and George Graham, who also were dead prior to February 20, 1835, on which date there was approved by the Governor of this Commonwealth a special

act of the General Assembly of the Commonwealth of Kentucky, for the benefit of the heirs of John and George Graham procured to be passed at the instance of certain petitioners claiming to be such heirs. As the act mentioned is the basis of this suit, it is copied in full herein, and is as follows:

"An act for the benefit of George and John Graham.

"Section 1.  Be it enacted by the General Assembly of the Commonwealth of Kentucky, That it shall be lawful for the adult heirs of George and John Graham, in person, or by attorney, and for the infant heirs of the said George and John Graham, by their guardian or their next friend, to file a petition in the court of a bill of chancery in the Greenup circuit court. setting out what lands they hold from their ancestors in the State of Kentucky, and the situation of the land, and the condition of the title, and it shall be the duty of the court to appoint a commissioner to examine into the condition of the lands, and the titles and their value, and it shall be lawful for the Greenup circuit court, if it shall appear to be to the interest of the said heirs to have said land sold, to decree a sale and appoint a commissioner to make either a public or private sale, on such terms and credits as said court may think most to the interest of the parties, and said court shall distribute the proceeds among said heirs on equitable principles from time to time, and cause the shares of the infants to be placed at interest or paid to their guardian on satisfactory security being given, and the court shall, after confirming any sale or sales, made by the commissioner, cause the land so sold, to be conveyed on the payment of the purchase money, or a lien to be retained in the conveyance for the purchase money.  Any conveyance made by the commis-

sioner of the land under its order shall be effectual to pass the estate of said heirs." Acts 1834-35, p. 160, c. 723.

The purpose and scope of the words of this act are now in dispute.

Without setting forth the respective contentions of the parties, we hold that the purpose of the act, as gathered from its context, was to confer a jurisdiction upon the circuit court of Greenup county that it did not then have, to-wit, to enable that court to sell all the lands owned in this State by the heirs of John and George Graham, and to convey to the purchasers such title as the heirs had. This was to be done by means of a commissioner to be appointed by that court, who was, by the terms of the act, "to examine into the condition of the lands and the titles and their value," and to make sale thereof, either publicly or privately, as that court might decree. It was not claimed that the lands could not have been divided without disadvantage to their value among the heirs. The contrary would appear to be true, each tract comprising several thousand, and in one instance more than one hundred thousand, acres. Courts of chancery then had not the inherent jurisdiction to sell infants' real estate, merely because it may have been advantageous to the infant to do so (Vowles Heirs v. Buckman, 6 Dana, 466; Henning v. Harrison, 13 Bush, 723; Walker v. Smyser's Ex'rs., 80 Ky., 620, 4 R. 662; Meddis v. Bull's Adm'r, 18 S. W., 6, 13 Ky. Law Rep., 767; Elliott v. Fowler, Guardian, 65 S. W., 849, 23 Ky. Law Rep., 1676), nor of adults either, for that matter. Their jurisdiction was statutory, and different in material particulars from that conferred by the act. It was to enable a speedy, inexpensive transfer of these titles in bulk that the heirs desired converting them into money for distribution among the parties in in-

terest, and it was to effect that that the act was passed. It was nowhere intimated in the act that the question of title or right of possession as between the heirs of the Grahams and any adverse claimants were to be, or could be, adjudicated in the proceeding authorized by the act. Some of the lands were described as lying on Red river, then in Fayette county; others on the Big Sandy, then probably in Lawrence. The court judicially knows the great distance and the hardships and delays in travel between these respective counties at that time. We can not indulge the presumption that the Legislature intended conferring jurisdiction upon the Greenup court to try titles to land lying in other remote counties, when the claimants or possessors were entitled to trials by a jury of the county where the land lay, if the action was in the nature of ejectment or trespass. The State of the general law, and the conditions then existing and above referred to, repel such presumption. Nor does the language of the act admit of it.

But, if we were in doubt on the last point, the matter is made perfectly plain by the interpretation put upon the act by its beneficiaries who had procured its passage. As early as the 7th day of April, 1835, they filed a petition in chancery in the Greenup circuit court, setting forth their names and relation to John and George Graham, deceased, and setting out in general terms that they jointly and in coparcenary owned the title to certain tracts of land in the counties mentioned above, as heirs at law of said Grahams, and reciting that: "During the late session of the Legislature of Kentucky, they laid before that honorable body a petition praying for the passage of a special act empowering a commissioner to sell all the lands lying in the State of Kentucky to which they had a joint title. That body not deeming it consistent with their legislative

duties to pass the act as desired by your petitioners, yet deeming their case worthy of further consideration, did pass an act for their benefit, authorizing certain proceedings in your honorable court to effect the desired sale. . . . In pursuance of the provisions of said act, your petitioners will proceed to set forth their title to a part of the lands they own in the State of Kentucky. Their limited information will not permit them at this time to set forth their title to all the lands to which they believe themselves entitled. They therefore hope that if further investigation shall discover to them other lands to which they may have a valid claim, that they may be permitted to amend this their petition, and that such lands, as well as those hereinafter named may under the orders of this honorable court be subjected to sale."

The prayer of the petition was as follows: "Your petitioners therefore pray that their title to all of the lands above mentioned may be inquired into by a commissioner appointed in pursuance of the act of assembly aforesaid, and that their title thereto may be sold by a commissioner appointed by the further order of this court. They pray for such other and further relief as the nature of the case requires, and equity and the special act under which this proceeding is had will justify, and as in duty bound they will ever pray," etc.

The petitioners were nonresidents of this State, and some of them were infants, who appeared by their guardians and next friends. The action was styled, and has continued upon the docket, as "John and George Graham's Heirs on Petition." There were no defendants or adverse parties. The Greenup circuit court then also took the same view of the powers conferred upon it by the act, and of the nature of the proceeding as indicated above. The

first decree entered in the action was on the 8th day of July, 1835. It was as follows: "The commissioner appointed herein at the last term of this court having reported, and the court, having considered thereof, is of opinion that the interest of the petitioners would be advanced by a decree empowering them to sell their lands in the report aforesaid mentioned. It is now, therefore, by virtue of the special act of Assembly in the petition referred to, decreed and ordered that William R. Beatty be appointed a commissioner, and he is hereby fully authorized and empowered to sell all the right, title, and interest of the petitioners, the heirs of John and George Graham, deceased, of, in, and to the 138,320 acres, the 80,406 1-2 acres, and the 13,470 acres in the report aforesaid mentioned. Said commissioner is authorized to sell said lands at private sale in such lots or parcels as to him shall seem most advantageous to the petitioners, and upon such terms and credits as he shall deem prudent, making report of all such sales to this court. It being the true intent hereof that no sale shall be obligatory upon the petitioners till approved by this court, and the petition is continued till next term."

The lands were not in the actual possession of the petitioners. The original petition on this point says: "Your petitioners would further represent that all the lands above described are very hilly and broken, and of but little value. That it is only occasionally you meet with a small spot fit for cultivation. That they are now wholly unproductive. That they can never derive any profit from them except by selling them."

There is no order directing the court's commissioner to take possession of the lands. Nor does it appear that such an order would have been necessary or proper in such pro-

ceeding. In 1859 the court directed the commissioner to "ascertain and report the quantity of land unsold, its situation and probable value, and whether the same, or any part thereof, is adversely held by others." The last commissioner's report filed in the case shows not only that none of the unsold land was in the possession of the commissioner, or any party to the suit, but expressly stated that part of it was in the actual adverse possession of appellees, and part of it was "wild, uninclosed land."

The case has been upon the docket of the Greenup circuit court almost continuously since 1835, except that for a period prior to November, 1895, it was not on the docket, but was then by order of court redocketed, not on motion of any of the parties to it, it is true, but upon the motion of the executor of a former commissioner in the case. Whether the case had been stricken from the docket by a judgment of the court does not appear, and, if it had, whether its being redocketed in the manner stated could give the court jurisdiction of it again, we refrain from deciding, in view of our conclusion upon more material points. On June 30, 1899, an amended petition was filed setting out that appellees had, since the filing of the original petition in 1835, entered upon certain of the lands, and had inclosed and were claiming same adversely to the petitioners. It was sought thereby to have their right of possession tried in that action, and as a final relief to have a writ of possession awarded the petitioners against appellees. It was alleged that appellees had entered wrongfully and without title. In 1838 Carter county was formed in part from the territory of Greenup, and embraced in its boundary the particular land now in dispute.

Appellants urge that, the Greenup circuit court having obtained jurisdiction to sell and convey the land under the

act of 1835, and by virtue of the filing of the petition there-- under, it continued to hold that jurisdiction for every pur- pose necessary to carry the case to final judgment notwithstanding the act creating Carter county had cut off this land into the latter county. This we grant. But we do not agree with appellants as to the purpose of the original suit, nor as to the scope of the act of 1835. It is not doubted that the Legislature might have conferred up- on the Greenup court the jurisdiction to try the title to lands situated anywhere in the Commonwealth. But it has not done it. A jurisdiction to sell property and a juris- diction to try and adjudge the title to the same property are distinct matters. Under the present laws the circuit court of the county where a decedent's personal represen- tative qualified has the exclusive jurisdiction of a suit for the settlement and partition of his estate, and to that end may sell the property left by the decedent, whether real or personal, and wherever situated in this State. Section 428 *et seq.*, Civ. Code, and section 66, same. But this court has expressly held that such jurisdiction does not include the right to try questions of title to such property as between the personal or real representatives of the deceased owner upon the one hand and an adverse party upon the other (Citizens' National Bank v. Boswell's Adm'r, 93 Ky., 92, 12 R., 469, 19 S. W., 174), particularly when the court would otherwise not have juris- diction of the parties or subject-matter. In a suit to par- tition lands among heirs (which must be brought in the county where the personal representative of the deceased ancestor qualified—section 66, Civ. Code), or in an action under sections 489-491, Civ. Code, to sell lands indivisible without materially impairing their value, or for the main- tenance of an infant owner, or for reinvestment for own-

ers under certain disabilities, such jurisdiction does not
include the right to bring into those actions adverse claim-
ants to the property and to try the title and right of pos-
session. McIntire v. McIntire's Exr, 82 Ky., 502; 6 R.,
559; Bacon v. Boyd, 34 S. W., 525, 17 Ky Law Rep., 1276.
Jurisdiction is vested exclusively in the circuit courts of
the counties where the land, or some part of it lies, of
suits involving its title. Section 62, Civ. Code. The Green-
up circuit court's jurisdiction was limited by the terms
of the act of 1835, to selling and conveying such title to
the lands named as John and George Graham's heirs may
have had. Jurisdiction to try disputes as to their title
between Graham's heirs and other persons was not touch-
ed upon by the act, and consequently is not affected by it.

It is thought, though, that there is something in the
doctrine that an entry by a stranger to the suit, *pendente
lite*, affects him by the judgment as if he were a party
to the record, as controlling the case before us. This doc-
trine can have no application here. It applies only when
the stranger enters under some person who is a party to
the suit. In that event he is bound by the record and de-
cree by privity of his relation to him from whom he took
title. He is bound in law to take notice of the records
affecting his vendor's title, but he is not bound to take
notice of, nor is he bound by, a suit over the property
between strangers to his chain of title and right of entry.
Herman Res Adjudicata and Estoppel, 205, 211, 212; Mor-
ton v. Long, 3 A. K. Marsh., 414; Henderson v. Pickett's
Heirs, 4 T. B. Mon. 58, 16 Am. Dec. 130; Stone v. Connelly,
1 Metc., 652, 71 Am. Dec., 499; McIntire v. McIntire's Ex's
supra.

Nor can the jurisdiction of the Greenup court be upheld
on the ground that appellees are in contempt in interfering

with the subject-matter of a suit pending in the court. The Greenup court was not in the possession of this land, by its receiver or otherwise. If appellees owned it, or had bought from one claiming to be the owner and not a party or privy to that suit, they had the right to enter upon it, although it was in litigation between others, so long as there was not a breach of the court's possession. Metcalfe v. Commonwealth Land & Lumber Co., Receiver, 113 Ky., 751, 68 S. W., 1100, 24 Ky. Law Rep., 527. There was no element of contempt shown by the record. Nor is that proceeding an appropriate one to try a disputed title. Jurisdiction cannot be obtained under guise of the writ for that purpose. In such cases it is confined solely to the trial of whether the court's receiver has been ousted of possession taken under order of court, in an action of which it had jurisdiction.

The judgment of the circuit court dismissing the amended petition because it had not jurisdiction of the suit against appellees is affirmed.