[No. 13869.  Department One. — February 3, 1891.]

## ALVAN D. BROCK, RESPONDENT, v. J. W. PEARSON ET AL., APPELLANTS.

STATUTE OF FRAUDS — AGENCY — ACCEPTANCE OF BENEFIT. — Where a party verbally authorizes another to acquire an outstanding contract of purchase of land without restricting him as to terms, and the latter acquires such contract by agreeing to pay the amount due on the same and giving to the holder a certain interest in the contract, and the principal accepts the benefit of the bargain, he is bound by the terms made.

ASSIGNMENT — DEED TO LAND TO WHICH GRANTOR HAS NO TITLE, BUT ONLY EXECUTORY CONTRACT OF PURCHASE. — A deed to a portion of land for which the grantor holds only an executory contract of purchase operates as an assignment of a proportionate interest in the contract.

EXTINCTION OF OBLIGATION — DESTRUCTION OF DOCUMENT — INTENT. — The destruction of a document which operates as an assignment of a portion of a contract of purchase of land does not extinguish the assignee's right, unless the destruction was with the intention to extinguish such right.

ID. — EVIDENCE OF INTENT. — Upon the question of the intent with which a document was destroyed, the acts of the agent who induced the other party to consent to such destruction are material, and a substituted contract given by him is pertinent although he had no authority to sign it.

CONFLICT OF EVIDENCE. — The rule as to conflict of evidence applies to cases of contradictions in the testimony of a witness. The conflict is all the more fatal for being intestine.

LIS PENDENS — AMENDMENT OF COMPLAINT. — The effect of a notice of lis pendens is not ordinarily destroyed by an amendment to the complaint.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order refusing a new trial.

The facts are stated in the opinion.

*King & Saufley, Houghton, Silent & Campbell,* and *John D. Bicknell,* for Appellants.

*Stephens, Apel & Stephens, E. L. Campbell,* and *Brousseau & Hatch,* for Respondent.

HAYNE, C.—This was a suit to compel the conveyance of an undivided one-fourth interest in a tract of 704 acres of land in the county of Los Angeles. The trial court decreed the conveyance of a one-eighth interest, and the defendants appealed.

The general features of the case are as follows: On the 9th of June, 1887, the owner of the land, one A. W. Timms, gave the plaintiff a contract of sale thereof for the sum of twenty-five thousand dollars. The defendant Pearson was desirous of acquiring the property, and instructed one H. V. Burner to negotiate for its purchase. The latter effected an arrangement with plaintiff whereby he was to give up his bargain upon certain terms which are considered below. The contract of sale, however, was not transferred directly to Pearson or to Burner. By Burner's direction it was transferred to one Weller, who acted in obedience to his instructions. As soon as Weller received the contract of sale, he (by direction of Burner) gave to plaintiff a quitclaim deed purporting to convey a one-fourth interest in the land. On being informed of this, Pearson (who seems at that time at least to have supposed that the deed conveyed some title to plaintiff) insisted that it should be destroyed. And under instructions to this general effect, Burner induced plaintiff to destroy the deed under an arrangement which will be considered below. A few days after this (viz., on July 9, 1887), Weller transferred the contract of sale to Burner, who on the same day made the first payment to the owner, received a deed from him, executed a mortgage back, and then conveyed the property to Pearson. On the 20th of the same month the plaintiff commenced the present suit, and recorded a notice of *lis pendens.*

Subsequently, Pearson transferred certain interests in the property to third persons, and on October 20th of the same year, joined with them in a conveyance of the property to the San Pedro Harbor, Dock, and Land Improvement Company. On April 23d of the following year, this corporation conveyed ninety-two acres of the property to the defendant the Southern Pacific Railroad Extension Company. The plaintiff subsequently parted with one half of his one-fourth interest.

The main questions discussed are the following, viz.: What was the agreement which Burner made with the plaintiff for the transfer of the contract of purchase, and what was its effect? What was the effect of the destruction of the "deed" from Weller to Burner? and, What was the authority of Burner in the premises?

1. The court finds, in substance, that the agreement made by Burner with the plaintiff was, that if the latter would give up his contract with the owner of the property, Pearson would purchase the property in accordance with such contract, "and would then and there, in consideration of the transfer of such agreement, convey to plaintiff an undivided one-fourth interest in and to said premises free from all liens and encumbrances."

This agreement was not in writing, but there is not the slightest doubt that it was made. Burner so swears. Plaintiff so swears. Weller so swears. And there is no evidence to the contrary.

The court further finds that in pursuance of this agreement, the plaintiff transferred the contract of purchase to Weller, who immediately gave to plaintiff a deed purporting to convey an undivided one-fourth interest in the land. And the evidence in support of this finding is uncontradicted.

Now, inasmuch as Weller had no title to the land, he could convey none to the plaintiff. But the parties seem to have regarded the "deed" as sufficient to protect the plaintiff's rights. And we think that it operated as an

assignment of a one-fourth interest in the contract of sale. (*Heinlen* v. *Martin*, 53 Cal. 321; *Hilton* v. *Young*, 73 Cal. 196.) It is possible that as against the owner of the property, the contract could not be split up in this manner. But no such question can arise between the parties here. It results that after this arrangement the plaintiff had a one-fourth interest in the contract.

2. What was the effect of the destruction of the deed above mentioned?

The defendants contend that such destruction was in pursuance of an arrangement made for the purpose of placing the title to the whole property in Pearson, so that he could "handle" it, and that the intention was to extinguish the obligation held by plaintiff, as provided in section 1699 of the Civil Code, and to substitute an arrangement by which the plaintiff was not to have any right to the land, but was only to be interested in the profits to arise from the "handling" of Pearson. The findings, however, distinctly negative any such idea.

The court finds that the deed was destroyed under an agreement that when plaintiff should obtain the legal title he "would immediately better and fully secure plaintiff to an undivided one-fourth interest in and to the same"; that the arrangement was not that plaintiff should be interested only in profits to arise from the acts of Pearson, but that the original agreement "was never modified or changed."

These findings are sustained by the testimony of Burner, by the testimony of Weller, and by the testimony of one Barber. And what is more to the purpose, it was proven that a writing was in fact executed by Weller (who still held the contract of sale), whereby a one-fourth interest in such contract was assigned to one Stratton, who was the agent and attorney for plaintiff. In this regard Stratton testified that he was the attorney for plaintiff, and that the arrangement was, that "in lieu of that deed an assignment should be taken by me to

hold for Brock, as trustee, temporarily, until the purchase
should be finally consummated and Pearson should ex-
ecute proper documents to secure Mr. Brock in his in-
terest."

As against this overwhelming evidence, the defendants
rely upon the testimony of the plaintiff himself, and
insist that he should be bound by it. It is undeniable
that the plaintiff (who does not seem to be a very clear-
headed man) testified, in a suit by a third party against
Pearson, that he was to be interested in the profits of a
corporation to be formed, and not in the property itself;
and he testified to something like that in the present
suit. But he also gave testimony going to show that
the corporation was to be a thing of the future, and was
not to operate as a present extinguishment of his inter-
est. Thus he says: "I did not understand that he was
to sell the property, because I claimed one fourth in it,
and should be consulted, but simply to enable him to
carry out a certain scheme of a corporation that was
*eventually* to take this property." And the other wit-
nesses testify that while there was some talk about a
corporation, nothing definite was concluded in relation
to it.

We cannot agree to the proposition that the plaintiff
is bound by such of his testimony as was favorable to
the defendants. At the very most, it only amounted to
a conflict in the evidence; and it has been said that a
conflict is "all the more fatal for being intestine."
(*Crook* v. *Forsyth*, 30 Cal. 662; *Bernal* v. *Wade*, 46 Cal.
666.) But we go further than this. We think it clear,
upon the evidence, that the right of the plaintiff to an
*interest in the land was not intended to be extinguished*,
and that the talk about profits related merely to future
action, which was that the property should be put in the
hands of Pearson, so that he could "handle" it for the
benefit of those interested in it. Such an arrangement
could be no stronger than a power of attorney to Pear-

son.   This could be revoked at any time, and whatever
arrangement was made was undoubtedly revoked by the
commencement of the present suit and the recording of
the notice of *lis pendens.*

One of the learned counsel for the appellants urges in
this regard that the plaintiff "cannot place the title un-
encumbered in Pearson for the purpose of a trade, obtain
the money of the corporations, and then be heard to
claim that the property was encumbered by some secret
trust in favor of himself."   And the others say: "Brock
permits Pearson to have a clear title for the very pur-
pose of conveying the property to a corporation clear of
all encumbrances, and then when Pearson has so con-
veyed to such corporation, Brock jumps up to ask that
the corporation deed back a part of the property to him,"
with more in the same strain.

The counsel overlook the fact that the present suit
was commenced, and the notice of *lis pendens* recorded,
on July 20, 1887, and that the conveyance to the
first corporation was not until October 20, 1887, and
to the second, not until April 23, 1888.   Furthermore,
there is not a syllable of evidence in the record to the
effect that Pearson ever paid or offered to pay any por-
tion of the profits to the plaintiff.   On the contrary, he
denied that plaintiff had any right to the land, and
after the suit was commenced said that he should never
get a cent.

3. What was the authority of Burner in the premises?

The court finds that Burner "at all times was the duly
authorized agent of the defendant Pearson, with general
power to purchase said property."

There is evidence in support of this finding.   Burner
testifies that he "received verbal instructions from the
defendant John W. Pearson to purchase the property";
that such instructions "were simply verbal, to get hold
of the property as best I could,— that is, to make the
best terms I could to get hold of the property"; and

that he was not simply to ascertain what the property could be bought for, but to "get hold" of it.

We do not see any evidence contradicting these statements. The argument for the appellants is founded on what occurred subsequently. In this regard Burner testifies that after the arrangement was made by which the plaintiff transferred his contract to Weller, and the latter gave back a deed to plaintiff, he (Burner) went to San Francisco and told Pearson what had been done, whereupon the latter said that "the transaction was satisfactory, except that he did not want that deed out. He said he wanted that deed destroyed. He said he would assign the various interests himself." Pearson's account is somewhat different from this. But he wrote a letter to Burner, in which he said: "There must be no lien or obligation on the seven hundred acres except the fifteen thousand dollars. *I will give the contract to carry the various interests* to you and your friend, *and for the man from whom you get the bond;* so sign nothing to any one," etc. This letter was shown to the plaintiff, and Burner testifies that "the transaction would never have went through if I hadn't got the letter then that he would agree to carry those interests satisfactorily to all parties."

Upon this evidence the only argument that can be made with any semblance of merit is, that Burner had no authority to *sign* anything; that the culminating act was to be done by Pearson himself; and that the plaintiff knew this, because the letter was shown to him.

But the answer is, that there was no need for him to sign anything. As shown under the first head of this opinion, the giving of the deed from Weller to the plaintiff operated as an assignment of a one-fourth interest in the contract. The giving up by plaintiff of his bargain was sufficient consideration for this assignment. And Burner had ample authority to make the arrangement, because, as above shown, he was sent with general in-

structions to "make the best terms I could to get hold of the property." This shows a right in the plaintiff. It devolved upon the defendants to show that such right was destroyed. And in order to do this they are driven to rely, and do rely, upon the destruction of the deed with the consent of the plaintiff. But in order to sustain this, it was necessary to show that the deed was destroyed "with intent to *extinguish* the obligation thereof." And we think we have shown conclusively, under the second head of this opinion, that there was no intent to "extinguish" the right of plaintiff to a one-fourth interest in the land. It was evidently destroyed under a belief that it conveyed title to the land, and the object was to have the title in the name of Pearson. But the oral evidence clearly shows that there was no intent to extinguish plaintiff's right to a conveyance, which was the only obligation the "deed" could have; and this is further manifest from the fact that a writing evidencing such right was actually given. The intent with which the deed was destroyed is the material thing; and in relation to this, it is of no consequence whether Burner or Weller had authority to sign anything or not.

4. The defendants, other than Pearson, had notice of the plaintiff's rights when they purchased the property. This is found by the court; and it seems plain that the notice of *lis pendens* was sufficient to charge them with notice. (*Randall* v. *Duff*, 79 Cal. 116.) The amendment to the complaint did not destroy the effect of the notice of *lis pendens*.

The other matters do not require special mention.

We therefore advise that the judgment and order denying a new trial be affirmed.

FOOTE, C., and BELCHER, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order denying a new trial are affirmed.