[L. A. No. 6171. In Bank.—April 7, 1920.]

## CAROLINE W. DOBBINS, Appellant, v. ECONOMIC GAS COMPANY (a Corporation), Respondent.

[1] MORTGAGE—WANT OF RECORD TITLE IN MORTGAGOR—RECORDATION NOT CONSTRUCTIVE NOTICE TO SUBSEQUENT PURCHASERS.—Where the owner of certain real property conveyed it to a corporation by a deed, which was never recorded and apparently lost, for bonds of the corporation whose payment was secured by a previously executed and recorded mortgage on the property, the mortgage, although recorded, did not come into the record chain of title, and constructive notice of it was not given by its record to subsequent purchasers, and the original owner remained as the record owner of the property free of any encumbrance.

[2] ID.—QUITCLAIM DEED—TITLE SUBJECT TO MORTGAGE—VALIDITY OF AGREEMENT—SUBSEQUENT PURCHASERS WITH NOTICE.—Where the owner of certain real property conveyed it to a corporation by a deed, which was never recorded and apparently lost, and thereafter such owner conveyed it by a quitclaim deed to another corporation of which the first corporation was merely a subsidiary, upon the understanding that the record title obtained by the quitclaim deed was to be subject to a mortgage on the property executed by the first corporation to secure the payment of bonds taken by the owner in payment for the property, the understanding was effective as between the parties and the mortgage a valid lien as between such parties and subsequent purchasers with notice.

[3] ID.—ACTION FOR FORECLOSURE—LIS PENDENS—PURCHASE PENDENTE LITE FROM HOLDER OF RECORD TITLE—CONSTRUCTIVE NOTICE OF MORTGAGE.—Where in an action by a bondholder for the foreclosure of such mortgage the original owner and the corporation having the record title were made party defendants and the owner in her cross-complaint alleged that such corporation claimed some interest in the property, but that it was subject and subordinate to the mortgage, and a *lis pendens* was duly recorded naming such corporation as one against whom relief was sought, the purchaser from such corporation during the action was charged with 'constructive notice of the mortgage and took subject thereto.

[4] ID.—ADVERSE TITLE—TRIAL IN FORECLOSURE SUIT.—While it is the rule that adverse titles may not be litigated in a foreclosure suit, yet the question as to whether the title of a defendant is in fact

1. Record of instrument out of line of title as constructive notice, note, Ann. Cas. 1917E, 486.
3. Who is purchaser *pendente lite*, note, Ann. Cas. 1918C, 53.

adverse or is one subject to the mortgage, and therefore properly subject to foreclosure, is a question which is properly presentable in the foreclosure suit and may be there tried and determined.

[5] ID.—ADVERSE CLAIM—ADJUDICATION IN FORECLOSURE SUIT—WHEN PERMISSIBLE.—While it is the rule that adverse titles may not be litigated in a foreclosure suit, yet if the parties to such an action voluntarily proceed to litigate the question of whether the title or interest of the defendant is adverse, and such question is determined by the decree, the determination is a valid adjudication.

[6] ID. — DETERMINATION OF INTEREST AS SUBJECT TO MORTGAGE— BINDING ADJUDICATION.—Where the owner of certain real property conveyed it by a deed to a corporation and the deed was never recorded, and thereafter the owner quitclaimed to another corporation of which the first was merely a subsidiary, upon the understanding that the title conveyed by the quitclaim deed should be subject to a mortgage executed by the first corporation, which was recorded, and, in an action for the foreclosure, the second corporation by its answer specifically alleged the execution of the quitclaim deed and claimed title, and the court declared that the interest of the second corporation was subject to the mortgage, such declaration was a binding adjudication.

[7] ID.—AMENDMENT OF PLEADING—NEW CAUSE OF ACTION—EFFECT UPON PREVIOUS PURCHASER PENDENTE LITE.—Where a new cause of action is injected into a suit by the plaintiff by amendment or otherwise, a previous purchaser *pendente lite* from a defendant of the subject matter of the suit is not bound by the judgment upon such new cause of action unless he is made a party.

[8] ID.—FORECLOSURE—AMENDMENT OF ANSWER—ISSUE OF ADVERSE CLAIM—DETERMINATION BINDING UPON PRIOR PURCHASER PENDENTE LITE.—Where, in an action for the foreclosure of a mortgage, a defendant by amendment of its answer raised the issue as to whether its interest was subject to the mortgage, and the court determined the matter, a purchaser *pendente lite* from such defendant was bound by the decree, since the amendment did not inject a new cause of action but merely raised a new issue, material to the original cause of action.

[9] ID.—PURCHASERS PENDENTE LITE—ADJUDICATION OF ISSUES RAISED BY SUBSEQUENT AMENDMENT.—A purchaser *pendente lite* is bound by the result of the suit, although that result may be based upon issues raised subsequently to his purchase, provided the matter adjudicated be the cause of action subject to which he bought and the issues be material and proper to that cause of action.

---

6. Remedy of one improperly omitted as party to foreclosure proceedings, note, 4 Ann. Cas. 848.

[10] TITLE BY PRESCRIPTION — CHARACTER OF POSSESSION. — Possession alone, no matter how exclusive and complete, is not sufficient to create a title by prescription.

[11] ID.—POSSESSION UNDER PURCHASE PENDENTE LITE—HOLDING NOT ADVERSE TO MORTGAGEE.—Where during the pendency of an action for the foreclosure of a mortgage the property is purchased from a defendant who holds it subject to the mortgage and the purchaser takes possession under and by virtue of such purchase, the possession is not adverse to the mortgagee and the statute of limitations does not run.

[12] ID.—FORECLOSURE OF PROPERTY OF PUBLIC UTILITY GAS COMPANY—RECOVERY OF MESNE PROFITS INDEPENDENT OF POSSESSION—RIGHT OF PURCHASER.—The purchaser at a foreclosure sale of real property belonging to a public utility gas company and used by it as a part of its gas plant may recover the mesne profits accruing subsequent to the sale, although possession may not be recovered by reason of it being property appropriated to a public use.

[13] ID.—ACTION TO RECOVER MESNE PROFITS—JUDGMENT UPON FINDINGS—RIGHT OF PLAINTIFF.—In this action by the purchaser at a foreclosure sale against the purchaser *pendente lite* to recover mesne profits accruing subsequent to the sale, it is held the plaintiff was entitled to judgment upon the findings, notwithstanding the finding that defendant had been in the exclusive adverse possession and that the plaintiff was not the owner of the property.

[14] ID. — ADJUDICATION OF PRIORITY OF LIEN OF MORTGAGE — CONSTRUCTION OF FINDING.—In an action by a purchaser at a foreclosure sale to recover mesne profits, a finding that the foreclosure decree "adjudged" that the lien of the mortgage was prior and superior to the interest of the company from whom the defendant purchased *pendente lite* was a finding that there had been a judicial determination of the superiority of the lien.

[15] ID. — STATUS OF PURCHASER FROM DEFENDANT PENDING FORECLOSURE ACTION.—Where a corporation having no title to mortgaged property was in the possession thereof at the time of the filing in the foreclosure suit of the cross-complaint upon which the decree of foreclosure was subsequently based, and such corporation was made a party defendant by the cross-complaint and a *lis pendens* was recorded naming it as such, and the decree adjudged that its interest was subject to the mortgage, and foreclosed, and pending suit it conveyed the property to one who in turn conveyed it to another corporation, who took possession, such latter corporation was a purchaser *pendente lite*, and its possession was not adverse to the mortgagee. (On denial of petition for rehearing.)

[16] ID.—IMPROVEMENTS MADE BY PURCHASER PENDENTE LITE—IMMA-
TERIALITY IN ACTION FOR MESNE PROFITS.—In an action by the
purchaser at a foreclosure sale against the purchaser *pendente lite*
to recover mesne profits, the fact that the property was improved
by the defendant is immaterial, for if such improvements were
included in the decree, and should not have been, the defendant's
remedy was in the foreclosure proceedings.  (On denial of peti-
tion for rehearing.)

APPEAL from a judgment of the Superior Court of
Los Angeles County.  Frank G. Finlayson, Judge.  Re-
versed.

The facts are stated in the opinion of the court.

Goodwin & Morgrage and Porter & Sutton for Appellant.

John E. Biby and Chickering & Gregory for Respondent.

OLNEY, J.—This is an action to recover the mesne
profits of certain real property in the possession of the
defendant, a public utility gas company, and used by it
as a part of its gas plant.  The plaintiff had recovered a
judgment foreclosing a mortgage upon the property, to
which mortgage the defendant was not a party, and had
bought in the property at the foreclosure sale and claims
to be the owner by reason of such foreclosure.  The profits
sought to be recovered are for the period subsequent to the
foreclosure sale.  The defendant had judgment and the
plaintiff appeals.  The ultimate question in the case is, Did
the foreclosure decree affect the defendant's interest?

The plaintiff, Mrs. Dobbins, was the original owner of the
property.  In April, 1903, she conveyed it to a corporation
known as the Los Angeles Suburban Gas Company, which
for brevity we will call the Suburban Company.  In con-
sideration of this conveyance the Suburban Company gave
Mrs. Dobbins fifty thousand dollars in par value of its
bonds, part of an authorized issue of three hundred thou-
sand dollars secured by mortgage or trust deed previously
executed and recorded and which in anticipation of the
conveyance from Mrs. Dobbins described the property in-
volved here as a part of the property mortgaged.  It was
this mortgage which was subsequently foreclosed and under
the decree foreclosing which Mrs. Dobbins purchased and

now claims. The deed by Mrs. Dobbins to the Suburban Company was never recorded and was apparently lost. [1] The result was that the Suburban Company was on the record not connected with the title; the mortgage by it, although recorded, did not come into the record chain of title and constructive notice of it was not given by its record to subsequent purchasers, and Mrs. Dobbins remained as the record owner of the property free of any encumbrance.

In this state of affairs Mrs. Dobbins in June, 1906, conveyed the property by quitclaim deed to a company known as the Peoples Gas Company, which, in turn, conveyed the property to the Peoples Gas and Coke Company. The latter was really nothing but the former under another name, and for the purposes of discussion the two may be treated as one. The effect of the conveyance by Mrs. Dobbins to the Peoples Company was, of course, so far as the record is concerned, to put the title in the latter free and clear of any encumbrance, and, in particular, of the mortgage by the Suburban Company. In fact, however, the quitclaim deed was not intended by the parties to put the title in the Peoples Company free of that mortgage. The Suburban Company was merely a subsidiary of the Peoples Company, all of its stock practically being owned by the latter, and the latter having taken over the Suburban plant. This was represented to Mrs. Dobbins, together with the fact that her original deed to the Suburban Company had been lost without being recorded, and the quitclaim deed was executed by her upon the understanding that it was to confirm to the Peoples Company the title conveyed by the lost deed to the Suburban Company. According to this understanding, the record title which the Peoples Company obtained by the quitclaim deed was to be subject to the mortgage securing the bonds taken by Mrs. Dobbins in original payment for the property.

[2] This understanding would, of course, be effective as between the parties. The result was that while the quitclaim deed had the effect of putting the record title in the Peoples Company free and clear of all encumbrances, yet the mortgage by the Suburban Company was as to the record owner a valid and subsisting lien, although not one of which the record would give anyone purchasing from the

record owner constructive notice. In other words, the case was one where the record title was subject to what was, in effect, an unrecorded mortgage. It follows that anyone subsequently purchasing for value from the Peoples Company would take free of the mortgage if he purchased in good faith and without notice, but otherwise he would not. The Peoples Company did sell to one Hayes, and Hayes in turn sold to the defendant. Both purchased for value, and if either purchased without notice, the record title acquired by such purchaser was at once freed of the latent equity of what was in effect the unrecorded mortgage by the Suburban Company. The question, therefore, which is determinative of the real merits of the case as between Mrs. Dobbins and the defendant is, Did either the defendant or Hayes purchase without notice, actual or constructive, of her mortgage?

The evidence that both Hayes and the defendant had actual notice of Mrs. Dobbins' claim when they purchased is ample and conclusive. It is unnecessary, however, to state the facts showing such notice, for constructive notice was plainly given them by the record. Prior to the purchase by Hayes suit had actually been begun to foreclose the Suburban mortgage. It was originally begun by one Gallagher, who claimed to own some bonds secured by it. Mrs. Dobbins and the Peoples Company were both made defendants. Mrs. Dobbins appeared and filed a cross-complaint seeking for herself as the owner of fifty thousand dollars of bonds to secure the foreclosure of the mortgage. The Peoples Company was made a party defendant to the cross-complaint, which alleged that the Peoples Company claimed some interest in the property, but that such interest was subject and subordinate to the mortgage. When Mrs. Dobbins' cross-complaint was filed a *lis pendens* was duly recorded, naming the Peoples Company as one against whom relief was sought. It was subsequent to the filing of the cross-complaint and the recording of the *lis pendens* that Hayes purchased from the Peoples Company, and the defendant, in turn, from Hayes. Hayes and the defendant were, therefore, notified of Mrs. Dobbins' complaint and of the nature of the cause of action there set up. At the same time they had notice from the record that the Peoples Company was the holder of the record title by deed from

Mrs. Dobbins. But of necessity Mrs. Dobbins could not be maintaining a suit to subject the interest of the Peoples Company to foreclosure except upon a claim that for some reason not appearing on the face of the record the unencumbered title which she had apparently conveyed to the Peoples Company was, in fact, encumbered. [3] In other words, the nature of the suit, taken in connection with the record chain of title, was unmistakable notice to Hayes and the defendant of her claim. It follows at once that if her claim was valid, as it was, they took subject to it, and their interests were subordinate to the mortgage. This being the case, the interests of the defendant were foreclosed by the foreclosure and sale, and Mrs. Dobbins is now the owner of the property.

Our discussion so far has been concerned with the underlying facts which go to the real merits of the matter as between the parties. It is also claimed, however, on behalf of Mrs. Dobbins that the very question as to whether or not the interest of the Peoples Company was subject to the mortgage was litigated in the foreclosure suit itself and there determined adversely to that company, and that the defendant here is bound by that adjudication as a purchaser *pendente lite*. The defendant, on the other hand, claims, first, that there was no such adjudication against the Peoples Company, and, second, that if there were, it was not binding upon the defendant here.

Mrs. Dobbins' cross-complaint contained the averment as to the Peoples Company usual as to a defendant in a foreclosure complaint other than a party to the mortgage, viz., that the Peoples Company claimed some interest in the mortgaged property but such interest was subject to the lien of the mortgage. The answer of the Peoples Company admitted that it claimed an interest, but denied that it was so subject. This was the state of the pleadings at the time when Hayes and the defendant purchased. The foreclosure decree subsequently rendered declared the interest of the Peoples Company to be subject to the mortgage. If this were all, the defendant's claim that there was no adjudication that the interest of the Peoples Company was subject to the mortgage would have to be sustained. The case would come directly within the rule of *Beronio* v. *Ventura Co.*, 129 Cal. 232, [79 Am. St. Rep. 118, 61 Pac. 958],

where it was held that just such a declaration in a fore-
closure decree upon just such pleadings was not an ad-
judication of the fact that the interest of the defendant
was subject to the mortgage. This decision has been fol-
lowed in a number of subsequent cases and as recently as
*Hartfield* v. *Howard,* 180 Cal. 376, [181 Pac. 385].

The ground upon which the decision in *Beronio* v. *Ven-
tura Co.* is put should, however, be carefully noted. The
case was one where the foreclosure defendant whom it was
sought to bind by the foreclosure decree had an adverse,
and, in fact, superior title to the property. The opinion
lays down the established rule, repeatedly followed in this
state, that a foreclosure suit cannot properly be turned
into a suit to quiet title and that the question of superiority
between a mortgage lien, or, more accurately, between the
title upon which it is a lien, and an adverse independent
title cannot properly be litigated in such a suit, with the
result that even if a judgment of foreclosure be rendered
against a defendant other than the mortgagor, the judg-
ment, unless there is some special adjudication in it, will
affect only such interest as the defendant may have which
is subject to the mortgage and not any interest he may have
which is not subject. The real question in the case was
whether or not the particular foreclosure decree under con-
sideration did contain a special adjudication by reason of
the averment of the complaint that the defendant's interest
was subject to the mortgage, the denial of this by the
answer, and the declaration of the decree in accordance with
the averment of the complaint. Upon this point, which was
the real point of the case, the court held the averment of
the complaint was not one of fact but of a conclusion of
law; that it therefore tendered no determinable issue and
its denial in the answer raised no issue, and that it followed
that the question of superiority of title had not been in-
volved and had not been adjudicated. The correctness of
this ruling is by no means free from doubt, and it would
certainly seem to be directly opposed to *Elder* v. *Spinks,*
53 Cal. 293, upon which it relies. But it has too long been
the rule in this state to warrant us in now reopening the
point decided. But it is not necessary to extend it any
further, and in that connection two things are to be noted
regarding it.

In the first place, while it holds to the rule, and properly so, that adverse titles may not be litigated in a foreclosure suit, it does not decide that it is not proper in such a suit to determine the question of whether or not the title claimed by the defendant is in fact adverse. That question is not discussed, and is very different from the question of superiority between adverse titles, which is discussed. Our decisions have repeatedly laid down the rule that a person who claims an adverse interest merely is not a proper party defendant in a foreclosure suit, and, if he is made a party, is entitled to be dismissed therefrom. (*Croghan* v. *Minor,* 53 Cal. 15; *Ord* v. *Bartlett,* 83 Cal. 428, [23 Pac. 705]; *Houghton* v. *Allen,* 75 Cal. 102, [16 Pac. 532]; *Cody* v. *Bean,* 93 Cal. 578, [29 Pac. 223].) But how is it possible to determine whether he is a proper party and entitled to be dismissed without determining whether his claim is adverse or not? An adverse title, whether it be superior or inferior, cannot be foreclosed because it is not subject to the mortgage. But whether the title claimed be adverse or not, so that in the one case it cannot be foreclosed and in the other it can be, would certainly seem to be a question directly involved in it. It would seem as if it were one of the proper functions of a foreclosure suit to determine what it is which can be and is foreclosed. In *Boggs* v. *Fowler,* 16 Cal. 559, [76 Am. Dec. 561], the opinion by Judge Field, speaking of the function of a foreclosure suit under our law, says: "Here, what is termed a foreclosure suit is only a proceeding for the legal determination of the existence of the lien, *the ascertainment of its extent,* and the subjection to sale of the estate pledged for its satisfaction. Upon the validity and *extent* of that lien the owner of the estate, whether mortgagor or his grantee has a right to be heard, and no valid decree for the sale of the estate can pass until this right has been afforded to him." (The italics ours.)

[4] The question whether the title of a defendant is adverse or is subject in the strict sense to the mortgage is surely more properly determinable by pleadings and trial before judgment than subsequently upon proceedings after judgment and sale for a writ of assistance to obtain possession. And yet, if the question is not determinable in one or the

other of these ways, but must always be left to a separate action, it means that in every case where the mortgagor has transferred possession it is not possible for the foreclosure purchaser to obtain possession against the objection of the mortgagor's transferee except by the slow process of an independent action. So far as we are aware, none of our decisions goes as far as this, or holds that when by proper averments of fact the question is presented in a foreclosure suit as to whether or not the interest of a defendant is adverse or is subject in the strict sense to the mortgage, such question is not properly determinable there. In actual practice the question is usually so determined, and the point seems to have been presented and decided in *Savings & Trust Co.* v. *Bear Valley Irr. Co.*, 112 Fed. 693, 703. In *Mercantile Trust Co.* v. *Sunset etc. Co.*, 176 Cal. 461, [168 Pac. 1036], the court proceeded in a foreclosure suit to consider and determine (page 467), whether or not the interest of a defendant who was a lessee from the mortgagor was subordinate to the lien, and at the same time refused (page 475) to consider a claim of adverse title by the same defendant. While the distinction is not discussed in the case, it is nevertheless observed.

[5] In the second place, it is expressly stated in *Beronio* v. *Ventura Co.*, that if the parties voluntarily proceed in the foreclosure suit to litigate the question of title, and such question is determined by the decree, such determination will be a binding adjudication. The statement, perhaps, is *dictum*, but it is manifestly correct, and *Johnston* v. *San Francisco Savings Union*, 75 Cal. 134, 140, [7 Am. St. Rep. 129, 16 Pac. 753], is directly in point. Much more would it be true where the question determined was not one of titles, but as to whether the defendant's interest was one not adverse but subject to the mortgage.

Coming back to the case at bar, according to *Beronio* v. *Ventura Co.*, as we have said, the foreclosure decree here, if it rested upon the pleadings as they stood at the time Hayes and the defendant purchased, would not be an adjudication that the interest of the Peoples Company was subject to the Suburban mortgage, in spite of the declaration it contains to that effect. But the Peoples Company did by subsequent amendment to its answer specifically allege

the execution of the quitclaim deed by Mrs. Dobbins and that it transferred the title to that company. The effect of this amendment was at once to raise the issue as to the character of the title under which the Peoples Company claimed, and upon this issue the court found specifically the facts as we have previously stated them in regard to the making of the deed, from which it follows at once that the title of the Peoples Company was subject to the mortgage. Following such a finding, the conclusions of law of the trial court in the foreclosure decree declare that the interest of the Peoples Company was subject to the mortgage. The foreclosure decree, with its declaration to the same effect, is based upon the pleading as so amended and upon the findings and conclusions of law. It must be viewed and construed in the light of them and, in fact, with them as a part of it. So viewed and construed, the decree is very different from that in *Beronio* v. *Ventura Co.* An issue of fact was presented. It was tried and determined. The foreclosure decree in suitable words declares the result of that determination. [6] Under these circumstances such declaration was an adjudication binding upon the party defendant, the Peoples Company, against whom it was made. It was an adjudication of an issue properly presentable in the suit and so presented. It was also an adjudication within the statement of *Beronio* v. *Ventura Co.*, and the ruling in *Johnston* v. *San Francisco Savings Union, supra*, that if the parties voluntarily present and litigate an issue not properly involved in the action, they will yet be bound by the resulting determination.

Passing now to the second point in connection with the foreclosure decree, the question as to whether it is binding upon the defendant here even if it were binding upon the Peoples Company from whom the defendant purchased *pendente lite*, the defendant's position is based upon the fact that at the time the Peoples Company sold, its answer had not been amended so as to raise the issue as to the subserviency of its title to the mortgage. The defendant's contention is that as a purchaser *pendente lite* it is bound only by the determination of those issues which were presented at the time it bought.

[7]   It is, of course, the rule that where a new cause of action is injected into a suit by the plaintiff by amendment or otherwise, a previous purchaser *pendente lite* from a defendant of the subject matter of the suit is not bound by the judgment upon such new cause of action unless he is made a party.   The simple reason is that the introduction of the new cause of action is in effect the commencement of a new suit, and, since the purchaser bought prior to its commencement, he is not as to it a purchaser *pendente lite.* Whether the same rule would apply where, as here, it is not the plaintiff, but the defendant from whom the purchaser buys, who injects the new cause of action into the litigation we need not inquire.   It would be necessary to inquire, if the issue raised by the answer of the Peoples Company had been one as to superiority of title, had been one whereby the foreclosure suit was as to such issue transformed into a suit to quiet title.   But that is not the case.   The issue raised by the defendant's amendment was as to the subserviency of its interest to the mortgage, that is, not as to whether it was superior to the title or interest upon which the mortgage was a lien, but as to whether it was covered by that lien, whether it was the estate or a part of the estate mortgaged.   This issue, as we have just held, was a proper one in the foreclosure suit and properly determinable there as a part of the action for the foreclosure of the lien.   The amendment, then, did not inject a new cause of action but merely raised a new issue material to the original cause of action presented by the cross-complaint.

[8]   There can be no doubt that under these circumstances the defendant here is bound as a purchaser *pendente lite* by the determination of that issue, although it was raised by subsequent amendment.   It may be that the defendant was not required to anticipate the introduction into the action, even by the party from whom it purchased, of a new cause of action and would not be bound by the course of such party in so doing.   [9]   But certainly a purchaser *pendente lite* is bound by the result of the suit, although that result may be based upon issues raised subsequent to his purchase, provided the matter adjudicated be the cause of action subject to which he bought and the issues be material and proper to that cause of action.   This is directly decided in

*Tilton* v. *Cofield*, 93 U. S. 158, [23 L. Ed. 858, see, also, Rose's U. S. Notes], whose language in fact goes further than is necessary for the purposes of this case. It is said (page 163):

"There is another objection to the case of the appellees, which must not be overlooked. They are not subsequent attaching creditors, nor creditors at all; they are purchasers *pendente lite*. The law is, that he who intermeddles with property in litigation does it at his peril, and is as conclusively bound by the results of the litigation, whatever they may be, as if he had been a party to it from the outset. (*Inlow's Lessee* v. *Harrey*, 11 Md. 524; *Salsbury* v. *Benton*, 7 Lans. (N. Y.) 352; *Harrington* v. *Slade*, 19 Barb. (N. Y.) 162; 1 Story's Equity, sec. 406.) The appellees voluntarily took the position they occupy. They chose to buy a large amount of property, including that in controversy, from the fugitive debtor. This was done after the latter had been seized under the writ of attachment, and while the suit in which it was issued was still pending. They took the title subject to the contingencies of the amendments that were made, and of everything else, not *coram non judice*, the court might see fit to do in the case. The attachment might be discharged, or the judgment might be larger than was then anticipated. They took the chances, and must abide the result. Having obtruded themselves upon the property attached, they insist that their purchase narrowed the rights of the plaintiffs and circumscribed the jurisdiction of the court. Such is not the law. After their purchase, the court, the parties, and the *res*, stood in all respects as they stood before; and the judgment, sale and conveyance have exactly the same effect as if the appellees and the facts upon which they rely had no existence."

The general rule in regard to amendments is thus stated in 25 Cyc.; at page 1473: "An amendment to the bill or complaint, after a purchase or the acquisition of other rights *pendente lite*, which does not alter the cause of action, does not affect the *lis pendens*, since it relates back to the filing of the original bill. On the other hand, if the cause of action is changed by the amendment, or a new cause added, the *lis pendens* does not relate back but dates from the filing of the amended complaint." (See, also,

*Mellen* v. *Moline Iron Works,* 131 U. S. 352, [33 L. Ed. 178, 9 Sup. Ct. Rep. 781, see, also, Rose's U. S. Notes]; *Miller & Lux* v. *Rickey,* 146 Fed. 574; *Norris* v. *Ile,* 152 Ill. 190, [43 Am. St. Rep. 233, 38 N. E. 762]; *Brock* v. *Pearson,* 87 Cal. 581, 588, [25 Pac. 963].)

Our conclusion is that the adjudication against the Peoples Company that its interest was subject to the mortgage is binding upon the defendant here as a purchaser *pendente lite.* It follows that for this reason also the interest of the defendant was foreclosed by the foreclosure decree and sale and that Mrs. Dobbins as the purchaser at the sale is now the owner of the property.

This conclusion, reached both upon the underlying facts and because of the scope of the foreclosure decree, is determinative of the real merits of the case at least, but there are further points which require discussion. Defendant's counsel, in their brief, take the position that the defendant was not a purchaser *pendente lite.* In fact, a large part of their argument is based upon this assumption. This position is rather puzzling, since the record is plain that the defendant purchased from Hayes and Hayes from the Peoples Company, and the Peoples Company, at the time of the purchase was a party defendant in the foreclosure suit and named as such in Mrs. Dobbins' cross-complaint, and had, in fact, appeared and answered. Furthermore, it was under the conveyance from the Peoples Company that the defendant received possession and it had no other muniment of title or right of possession. Just why it is said, under these circumstances, that the defendant was not a purchaser *pendente lite* is rather difficult to see.

Apparently what is meant is that although the defendant was a purchaser *pendente lite,* yet it now has, not that it then had, a title by adverse possession, and that such title is not one purchased *pendente lite* and as to it the defendant is not a purchaser *pendente lite.* This, of course, is true provided the defendant has a title by adverse possession. The question is, Has it such a title? Defendant's counsel maintain stoutly that it has and the lower court so found and based its judgment for the defendant upon that finding. The finding of adverse possession, however, is specifically only of a possession commencing with the defendant going into possession. The court also finds specifi-

cally that the defendant took possession under the purchase through Hayes from the Peoples Company, then a party defendant to the foreclosure suit. The salient fact, in other words, as shown by the findings themselves as well as by the evidence, is that the possession which it is now claimed has ripened into a title by prescription was possession acquired under a purchase from a party defendant to a foreclosure suit against whom a foreclosure decree was subsequently rendered. Now, there is no doubt that from the time the defendant took possession of the property in June, 1909, until the commencement of the present action the period of five years required to give it a title by adverse possession had more than elapsed, and that during the whole of the period the defendant was in the exclusive and complete possession of the property and claimed to be the owner of it, as in fact it was up to the time at least of the foreclosure sale. [10] But possession alone, no matter how exclusive and complete, is not sufficient to create a title by prescription. In order to do that the possession must be adverse. The question here is, was the defendant's possession adverse to the mortgage whose foreclosure it is now sought to defeat, and this question is hardly discussed in the briefs. Upon this point the fact that the defendant was a purchaser *pendente lite* and acquired possession as such is most material and, in fact, decisive. The question may be stated thus: During the pendency of a mortgage foreclosure suit, A purchases the property from a defendant in the suit who holds it subject to the mortgage and takes possession under and by virtue of such purchase; is A's possession so acquired and held one which is adverse to the mortgage so that the statute begins to run in favor of the purchaser and against the mortgagee? The answer to the question seems to us evident. If such were the rule, no mortgage would be safe. If suit were brought to foreclose it, and the mortgagor then conveyed the property to a third person and gave the latter possession, the mortgage could be completely defeated if only it were possible, as too frequently it would be, to toll the foreclosure suit along until five years had elapsed. The truth is, that even if no suit were pending at the time of the purchase and acquisition of possession from the mortgagor, the possession of the purchaser would not be adverse to the mortgagee so that

he could secure title by prescription. His possession is but that of the mortgagor whose successor in interest he is, and is no more adverse to the mortgagee than would be that of the mortgagor. It is, in fact, merely the possession of the mortgagor transferred. Much more is this true where, as here, the purchase is made *pendente lite.* Then the case comes within the elementary principle that the statute does not run during the pendency of litigation against rights involved in the litigation and which are subsequently reduced to judgment therein. If it be true, as it plainly is, that the Peoples Company, if it had remained in possession during the pendency of the foreclosure suit, could not have acquired by such possession a title superior to the mortgage subject to which it held the property and to the judgment foreclosing the mortgage, the same thing must be true as to the defendant who as a purchaser *pendente lite* merely stands in the shoes of the Peoples Company. This is not saying that the defendant, if it had an independent and a superior title not subject to the mortgage, might not assert and rely upon it. It is saying only that a superior title cannot be *created* by possession acquired during the litigation from a party defendant to that litigation. The claim of the defendant here is just that and nothing more.

The case comes exactly within *Pratt* v. *Pratt,* 96 U. S. 704, [24 L. Ed. 805, see, also, Rose's U. S. Notes]. There the statute of Illinois provided a limitation of seven years on actions for the recovery of real property. The action was ejectment and both parties claimed from one Speer. The plaintiff had obtained a judgment against Speer in 1857, which was a lien upon the land. In 1863 the land was sold on execution upon the judgment, and in 1865, pursuant to the sale, was deeded by the marshal to the plaintiff. After the recovery of the judgment and its becoming a lien, but long before the sale, Speer sold the land to another, from whom it came by mesne conveyances to the defendant, the possession of the property passing with such conveyances. Within less than seven years after the plaintiff received the marshal's deed, but more than seven years after Speer had parted with the property and the defendant had taken possession, the action before the court was brought. The defendant's claim was that the statute had

run in his favor. His possession was, as here, of a character sufficient for that purpose, provided the case were one where his possession prior to the making of the marshal's deed could be adverse. It was held, however, that it was not such a case. The court said:

"The defendant, having purchased the land of the person who had the legal title, does undoubtedly hold adversely to everybody else. He admits no better right in anyone. He is no man's tenant. The right by which he holds possession is superior to the right of all others. He asserts this, and he acts on it. His possession is, in this sense, adverse to the whole world. But it is not inconsistent with all this that there exists a lien on the land—a lien which does not interfere with his possession, which cannot disturb it, but which may ripen into a title superior to that under which he holds, but which is yet in privity with it. In the just sense of the term his possession is not adverse to this lien. There can be no adversary rights in regard to the possession under the lien, and under the defendant's purchase from the judgment debtor, until the lien is converted into a title conferring the right of possession. The defendant's possession after this is adverse to the title of plaintiff; and then, with the right of entry in plaintiff, the bar of the statute begins to run."

And again:

"If we are wrong in what we have supposed to be the law, it must follow that, in all cases in which the owner of real estate owes money which is a lien on the land in his hands, the statute of limitation begins to run against that lien as soon as he conveys the land with possession to someone else. It can make no difference in the principle asserted, whether the lien be created by a judgment or by a mortgage. Nor can it make any difference whether the debt secured by the lien be due when the conveyance is made, or has ten or twenty years to run before the lien can be enforced against the land. The principle asserted is applicable in all these cases; namely, that from the day of the conveyance by the debtor, of the land on which the lien of the debt exists to some third person, accompanied by transfer of possession, the possession of the purchaser is adverse to the lienholder, and the limitation of seven years begins to run. If this be established to be the law,

the owner of real estate may borrow money on ten years' time, to the value of that estate, and give a mortgage on it to secure payment; and by a sale and conveyance of the land to a third person, with delivery of possession a week afterward, the lien is utterly defeated. For, according to this doctrine, the statute of limitations begins to run against the mortgagee the moment the title and possession are vested in the purchaser, and the bar of the statute becomes perfect against all the world by seven years' possession; whereas the mortgagee can take no steps to foreclose his mortgage until his money becomes due, three years later.

"And this doctrine is asserted in the face of the fact that there is a limitation law specially applicable to the enforcement of the judgment lien by sale under execution, and of the mortgage lien by foreclosure."

See, also, *Jefferson* v. *Wendt*, 51 Cal. 573; *Leonard* v. *Flynn*, 89 Cal. 535 [23 Am. St. Rep. 500, 26 Pac. 1097].

[11]   To close up our discussion of this point of a title acquired by the defendant here by adverse possession, we may say that it resolves itself into the very simple rule which can hardly be gainsaid, that the statute of limitations does not run during the pendency of the litigation in favor of a purchaser *pendente lite* any more than it does in favor of the party from whom he purchases, and that he will not be regarded as holding the property adversely during the litigation. (*Christy* v. *Spring Valley Water Works,* 97 Cal. 21, [31 Pac. 1110]; *In re Grider*, 81. Cal. 571, [22 Pac. 908].) The creation of an independent title by adverse possession during the litigation is very different from the assertion of a superior title existing independently of such possession. The defendant here has no such superior independent title and asserts none. Its only claims are its right derived from the Peoples Company, which was foreclosed, and its right by possession during the litigation. But such possession could not be adverse, and the general finding of the lower court that the defendant acquired a title by adverse possession and that the plaintiff, therefore, is not the owner is not only contrary to the evidence, but is contrary to the facts specifically found with regard to the defendant's possession and is

completely negatived by those facts. The general finding is, in truth, but a conclusion of law erroneously drawn from the particular facts found.

The remaining contention of the defendant which requires consideration is that it is a public utility corporation; that the property involved is an integral part of its plant and required for adequate service to the public; that the plaintiff cannot be given possession without interfering with such service; that, therefore, even though she be the owner of the property, she cannot have possession of it, and that an action for mesne profits will not lie except as an incident of the recovery of possession. It may be admitted that the plaintiff, although she is the owner of the property, cannot have possession of it because it has been appropriated to a public use which would be interfered with by giving her possession. It may also be admitted that ordinarily mesne profits cannot be recovered except as an incident to the recovery of possession. [12] But it does not follow that the owner of real property in the peculiar situation of the plaintiff here may not maintain an action for mesne profits, although she cannot have possession. She would be entitled to possession and could recover it except for the public interest which intervenes between her and the defendant and prevents her having the full measure of relief to which otherwise she would be entitled. But the public interest should not be permitted to affect the rights of the parties further than the protection of such interest itself requires. So far as may be done without interfering with the public interest, the position of the plaintiff should be that which she would have except for its intervention. Without its presence she would have the right both to possession and to mesne profits. With it present she cannot have possession, but as to mesne profits, the public interest will in no wise be injuriously affected by permitting their recovery. There is no public interest which intervenes as to them.

The case comes within the principle of *Nathan* v. *Dierssen*, 164 Cal. 607, [130 Pac. 12]. There an action was brought for mesne profits by a plaintiff out of possession. Pending the action the defendant surrendered possession and thereafter judgment was given against him for mesne

profits without any judgment for possession. The absence of such judgment was relied upon on appeal as a ground for reversal. It was held, however, that there was no occasion for a judgment for possession since the plaintiff already had possession. It follows that if a plaintiff is entitled to mesne profits without a judgment for possession, he may have judgment for the profits alone. The present case is of that character. The plaintiff cannot have a judgment for possession, if the defendant's contention be correct, but for a reason which does not affect her right to the mesne profits. To them she is entitled, and she should, therefore, be permitted to have judgment for them without a judgment for possession.

The various conclusions we have stated necessitate a reversal of the judgment against the plaintiff. They go further. They show that the plaintiff was plainly entitled to judgment upon the evidence presented at the trial. It remains to consider whether judgment can be entered for her upon the findings. The findings set forth that the plaintiff was the original owner of the property: that she conveyed it to the Suburban Company, which executed its mortgage; that the mortgage was foreclosed upon the plaintiff's cross-complaint; that the Peoples Company was made a defendant to the cross-complaint and a *lis pendens* naming it as a defendant was recorded by the plaintiff at the time the cross-complaint was filed; that the foreclosure decree "ordered, adjudged and decreed . . . that said mortgage was a lien prior and superior to any and all rights, title and claims and interests of any of the defendants in said action on the property described in the judgment [foreclosure decree]; that the property was sold at foreclosure and bought in by the plaintiff and the sheriff's deed to her executed; that the defendant was a purchaser *pendente lite* from the Peoples Company, who was at the time in possession; that the defendant entered into possession claiming title only under such purchase; that it has remained in possession ever since; that the property is part of a public utility plant, and that the reasonable value of the use and occupation of the property was $415 a month. [13] These findings are sufficient to require judgment for the plaintiff except, possibly, in two respects.

In the first place, there is, in addition to the findings stated, the finding that the defendant has been in the exclusive adverse possession ever since it took possession and that the plaintiff is not the owner of the property. This finding we have already discussed at length. If it stood alone, it would, of course, be a finding of an ultimate fact which could not be disregarded. But it does not stand alone. With it are findings as to the particular facts with relation to the defendant's possession. These findings are to the effect that while the defendant's possession ever since it took it has been exclusive and complete under a claim of ownership, yet such possession was acquired from one who was at the time a defendant in the foreclosure action and against whom the foreclosure decree subsequently rendered operated, and was acquired by way of purchase from such defendant and not otherwise. These particular facts so found completely negative the possibility of the defendant's possession being adverse so as to ripen into a title by prescription good against the final decree in the action subject to the result in which the property was purchased and possession acquired. It appears clearly that the general finding that the defendant had been in the exclusive adverse possession of the property for more than five years and the plaintiff was not the owner is but a conclusion from the fact that the defendant had for more than five years been in the exclusive possession of the property under a claim of ownership. But the fact also found that such possession was acquired under grant from a party to an action then pending with relation to the property affirmatively shows that the conclusion is erroneous. As such it comes within the principle of such cases as *Savings & Loan Soc.* v. *Burnett,* 106 Cal. 514, 538, [39 Pac. 922]; *Howeth* v. *Sullenger,* 113 Cal. 547, 550, [45 Pac. 841], and *McDonald* v. *Randall,* 139 Cal. 246, 253, [72 Pac. 997], and may be disregarded.

In the second place, there is no finding connecting the interest of the Peoples Company with the Suburban mortgage or the title of the Suburban Company. The finding, on the contrary, is that the Peoples Company had no right whatever in the property other than that of possession. If the fact as shown by the findings was merely this, it

would not appear that the interest of the Peoples Company to which the defendant succeeded had been foreclosed and purchased by the plaintiff. The case would come within the rule that in the absence of a special adjudication a foreclosure decree operates only upon such interests as are subject to the mortgage, and it would not appear from the findings that the interest of the Peoples Company was of that character. But the findings go further. They find not merely the foreclosure of the Suburban mortgage, but they find that the foreclosure decree "ordered, *adjudged* and decreed" that the Suburban mortgage was a lien prior and superior to the interest of the Peoples Company. In other words, the findings show that the interest of the Peoples Company was actually foreclosed upon, so that in this respect as well the findings are sufficient to justify and to require judgment for the plaintiff.

It may perhaps be objected that while the foreclosure decree itself when considered, as we have heretofore considered it, in connection with the judgment-roll of which it is a part, shows that the interest of the Peoples Company was foreclosed upon, yet neither the decree nor the balance of the judgment-roll are a part of the findings here, that the findings here must be construed by themselves, and that so construed they amount on this point only to a finding that the foreclosure decree contained the usual declaration as to defendants not parties to the mortgage, a declaration which, under *Beronio* v. *Ventura Co.,* would not, in the absence of anything more, be an adjudication that the interest of the Peoples Company was foreclosed. It is true that neither the foreclosure decree nor the judgment-roll is a part of the findings and that the findings must be construed by themselves. [14] But, even so, the construction that they find merely that the foreclosure decree contained a possibly inoperative declaration of the character mentioned cannot be sustained. The language of the findings is that the foreclosure decree "adjudged" that the lien of the mortgage was prior and superior to the interest of the Peoples Company. "Adjudged" is the equivalent of "adjudicated," and means a judicial determination and not a mere declaration which may be operative or not.

Judgment reversed, with directions to the trial court to enter judgment for the plaintiff in accordance with the findings as to the value of the use and occupation of the property.

Shaw, J., Angellotti, C. J., Lennon, J., and Lawlor, J., concurred.

Rehearing denied.

In denying a rehearing the court filed the following opinion on May 7, 1920:

THE COURT.—In denying the petition of the defendant for a rehearing we deem it well to discuss two points which are raised by the petition. The first is that the trial court found that the Peoples Gas and Coke Company never had any title to the mortgaged property, and from this it is argued that the defendant by its purchase through Hayes from the Gas and Coke Company acquired no title, and was therefore not a purchaser *pendente lite* and not subject to the rule that the statute of limitations will not run in favor of such a purchaser in possession during the pendency of the litigation. It is true that the trial court found that the Peoples Gas and Coke Company never had any title to the property, the finding being based upon the supposed invalidity of the deed whereby the Gas and Coke Company purported to acquire the interest of the Peoples Gas Company. The right of the defendant to question the validity of this deed is open to serious question, but the point need not be determined, for the finding is wholly immaterial in any case. It makes no difference how invalid the title of the Peoples Gas and Coke Company was. The facts are, and the trial court so finds, that that company was in possession of the property at the time of the filing in the foreclosure suit of the cross-complaint of Mrs. Dobbins upon which the decree of foreclosure was subsequently based, that the Gas and Coke Company was made a party defendant by the cross-complaint and a *lis pendens* was recorded naming it as such, that the foreclosure decree adjudged that its interest, whatever it might be, was subject to the mortgage so that it was foreclosed upon, that pending the foreclosure suit instruments of con-

veyance purporting to convey the property from the Gas
and Coke Company to Hayes were executed, that Hayes,
in turn, executed a deed purporting to convey the prop-
erty to the defendant, and that the defendant "entered
into the actual possession of said property, and each and
every part thereof, under said deed executed by said Hayes,
as aforesaid, claiming and asserting title to said property
by reason of said deed to it from said Hayes and under no
other written instrument."

In other words, as found by the court, the title or claim
of title of the Gas and Coke Company, however invalid
it might be, was the only right or title which the defendant
had when it took possession, and it took possession as the
holder of such title and not otherwise.   [15]  Such title
was plainly acquired by the defendant as a purchaser
*pendente lite* subject to the determination of the foreclosure
suit, and of necessity the possession which accompanied
such title and which was taken and held only by virtue of
it was likewise held by the defendant as a purchaser
*pendente lite* and was subject to the determination of the
foreclosure suit, and could not ripen as against the result
in that suit into a title by adverse possession.

Defendant's counsel in support of their position quote
from *Irving* v. *Cunningham,* 77 Cal. 52, [18 Pac. 878], as
follows, the italics, however, being ours: "Persons not
parties to an action of ejectment cannot be put out of pos-
session of the premises involved, *unless they entered under
the defendant,* either in good faith or collusively," and
from *Graham's Heirs* v. *Kitchen,* 118 Ky. 18, [80 S. W.
464], as follows, the italics again being ours: "It is thought,
though, that there is something in the doctrine that an
entry by a stranger to the suit, *pendente lite,* affects him
by the judgment as if he were a party to the record, as
controlling the case before us.  This doctrine can have no
application here.  It applies only *when the stranger enters
under some person who is a party to the suit.  In that
event he is bound by the record and decree by privity of
his relation to him from whom he took title.*  He is bound
in law to take notice of the records affecting his vendor's
title, but he is not bound to take notice of, nor is he bound
by, a suit over the property between *strangers to his chain
of title and right of entry.*"

We do not question the correctness of these statements, but the present case comes directly within the rule implied in the first quotation and expressly stated in the second that, "when the stranger enters under some person who is a party to the suit . . . he is bound by the record and decree by privity of his relation to him from whom he took title." The Peoples Gas and Coke Company was a party defendant to the foreclosure suit. The defendant here entered under that company while it was such a party and not otherwise. That company was not a stranger either to the defendant's chain of title or to its right of entry. The defendant's possession was acquired and held solely by virtue of the privity of relation between it and the Peoples Company, and such possession cannot be considered as any more adverse to the plaintiff in the foreclosure suit than could the possession of the Peoples Company, if it had remained in possession. The privity of. relation between the defendant and its grantor, the Peoples Gas and Coke Company, does not depend in any way upon the grantor having a valid title and is not affected in the slightest by the fact that it had no valid title.

Defendant's counsel also urge that upon the point under discussion the case is governed by *Robinson* v. *Thornton,* 102 Cal. 675, [34 Pac. 120]. But the facts there, while in some aspects resembling those here, really presented a very different situation. The facts were that the owner of certain land mortgaged it. Suit to foreclose the mortgage was brought and after decree of foreclosure and sale the interest of the mortgagor was attached' in an action against him by a third person. The period of redemption from the foreclosure sale then expired without redemption, as a result of which the foreclosure purchaser became the absolute owner of the property free and clear of the attachment lien which was, in effect, destroyed. In this situation the mortgagor deeded the property to one Thornton, . who took possession and thereafter maintained it. Thornton's possession so taken after the expiration of the period of redemption was, of course, hostile and adverse to the foreclosure purchaser, the real owner of the property, and if allowed by the latter to continue would ripen into a title by prescription against him. It was allowed so to continue, and thereby Thornton became the real owner of

the property. Years later judgment was obtained in the attachment action against the original mortgagor, execution was issued upon it, and the property sold thereunder. The execution purchaser then brought ejectment against Thornton and upon the foregoing facts the court held that he could not recover. This decision was plainly correct. The plaintiff, the execution purchaser, had no right in the property whatever. In order to have any right he had to depend upon the attachment lien. But the attachment lien had been wiped out by the foreclosure sale. On the other hand, the defendant Thornton was the real owner of the property. He had acquired a complete title by prescription against the true owner, the foreclosure purchaser. Such title was a wholly independent title so far as the execution purchaser was concerned, and was not acquired by possession hostile to him, but hostile to the foreclosure purchaser, whose right was superior to the attachment lien and therefore to the execution purchaser. The case, in reality, is but one coming within the general rule that a person entering into possession under a party to pending litigation may yet assert an independent title against the result of that litigation. It does not contravene the very necessary rule, applicable in the present case, that the possession of such a person pending the litigation may not be considered as hostile so as to defeat the litigation.

[16] The second point we desire to discuss is the plea that, instead of directing judgment for the plaintiff, the cause, at most, should be sent back for a new trial. This plea is made on the ground that the defendant has added very substantial improvements to the property while it has been in possession under a claim of right, that the property, the value of whose use and occupation is found by the court, includes these improvements, that the defendant has the right to remove such of the improvements made by it as can be removed without injury to the realty and should not be held liable for the value of the use and occupation of what may be so removed, and that a new trial is necessary to determine what may be so removed and the value of the use and occupation of the property after such removal. The answer to this is that the plaintiff is entitled to recover the value of the use and occupation of whatever was sold by the foreclosure decree, and that the property,

the value of whose use and occupation is found by the court, is the same as that which is found to have been sold by the foreclosure decree. That the property was improved by the defendant is now immaterial. If such improvements were included in the foreclosure decree and should not have been, the defendant's remedy was in the foreclosure proceedings. If they were not included in the foreclosure decree, the findings show that they were not included in the property, the value of whose use and occupation is found, and for the value of whose use and occupation, as found, we have directed judgment for the plaintiff.

There are other points discussed in the petition, but they are all determined by what has been said in the original opinion, and we see no reason for departing from the conclusions there stated.

Rehearing denied.

All the Justices concurred.